United States Court of Appeals
Fifth Circuit

**F I L E D**

August 21, 2003

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-21263

_____

MARCUS BRIDGER COTTON,

Petitioner-Appellant,

versus

JANIE COCKRELL, Director, Texas Department
of Criminal Justice, Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civil Docket H-01-CV-2201
_____

Before JONES, STEWART, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Marcus Bridger Cotton was convicted of capital murder and sentenced to death for murdering Assistant District Attorney Gil Epstein during a robbery in November 1997. After he exhausted state remedies, Cotton filed a § 2254 petition for a writ of habeas corpus in federal district court raising twelve issues. The district court granted the state's motion for summary judgment on all twelve issues. The district court granted summary judgment and

1

denied Cotton's petition. The district court also refused to grant a certificate of appealability ("COA") on any of the issues raised by Cotton.

Cotton now seeks a COA from this court on four issues: (1) whether the prosecutor improperly commented on the defendant's failure to testify, (2) whether his trial counsel provided constitutionally ineffective assistance by failing to call two witnesses to testify at trial, (3) whether he was denied due process by comments made by the trial judge during jury selection about the history of the Texas capital sentencing scheme, and (4) whether his trial counsel provided constitutionally ineffective assistance by failing to object to the trial judge's comments regarding the Texas capital sentencing scheme. We grant a COA on the first issue but deny the application for COA on the other issues. With respect to the issue regarding the prosecutor's closing argument, however, we affirm the district court's denial of habeas relief.

## BACKGROUND

At Cotton's second trial for capital murder, Lawrence Watson testified that on September 18, 1996, he and Cotton decided to commit a robbery because they were broke. Sometime later that day, Cotton and Watson observed Gil Epstein and Sean Caruthers walking toward their cars in the Houston Jewish Community Center parking lot and decided to rob them. Watson approached Caruthers,

2

pointed a .38 caliber revolver at him, and demanded money. Caruthers gave his wallet to Watson and Watson ordered him to leave. At the same time, Cotton accosted Epstein. Cotton forced Epstein to the ground with a .380 caliber semi-automatic pistol and demanded his money. Epstein told Cotton he did not have any money. Cotton walked Epstein to his car, forced Epstein into the back seat, and began to search Epstein's wallet and glove compartment.

Caruthers testified that after being ordered to leave by Watson, he drove to the front of the community center and went into the center seeking help. Caruthers came back outside and drove to the side of the building where he saw Cotton in Epstein's car. Watson was on a bicycle outside of Epstein's car. Caruthers began to flash the car's lights and honked the horn in an attempt to alert the police. Watson testified that when Caruthers created this disturbance Cotton yelled to Watson to "kill that bitch." Watson aimed his gun at Caruthers, but without having fired his weapon, he heard a gunshot behind him. Watson turned around and saw Cotton fire his gun while still in Epstein's car. Several witnesses testified that Cotton said he decided to kill Epstein when he found in Epstein's wallet a badge identifying Epstein as an assistant district attorney for Fort Bend County, Texas. After shooting Epstein, Cotton left the car, jumped on his bicycle and rode toward Caruthers' car. Caruthers drove into Cotton, knocking Cotton off his bike. Cotton and Watson then escaped.

3

Cotton was first tried for the murder of Epstein on March 17, 1997. Jury deadlock caused a mistrial. At a second trial in November 1997, a jury convicted Cotton of capital murder. Cotton was sentenced to death. On direct appeal, the Texas Court of Criminal Appeals upheld Cotton's conviction and sentence. Cotton v. State, No. 72,964 (Tex. Crim. App. June 30, 1999) (unpublished). The Supreme Court denied Cotton's petition for writ of certiorari. Cotton v. Texas, 530 U.S. 1277 (2000).

Before the Supreme Court's denial of his petition, Cotton filed a state application for habeas corpus. The trial judge entered findings of fact and conclusions of law, which were adopted by the Court of Criminal Appeals in denying habeas relief. Ex parte Cotton, No. 49,499-01 (Tex. Crim. App. June 7, 2000)(unpublished). On June 29, 2001, Cotton filed a petition for a writ of habeas corpus in federal district court.

## DISCUSSION

Cotton's § 2254 habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See Penry v. Johnson, 532 U.S. 782, 792 (2001). Under AEDPA, Cotton must obtain a COA before he can appeal the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1) (2000); Slack v. McDaniel, 529 U.S. 473, 478 (2000). "[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits

4

of appeals from habeas petitioners." Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003).

To obtain a COA, Cotton must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000); Miller-El, 123 S. Ct. at 1039; Slack, 529 U.S. at 483. To make such a showing, he must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El, 123 S. Ct. at 1039 (quoting Slack, 529 U.S. at 484).

In Miller-El, the Supreme Court instructed, as it had previously held in Slack, that we should "limit [our] examination to a threshold inquiry into the underlying merit of [the petitioner's] claims." Miller-El, 123 S. Ct. at 1034. The Court observed that "a COA ruling is not the occasion for a ruling on the merit of petitioner's claim . . ." Id. at 1036. Instead, our determination must be based on "an overview of the claims in the habeas petition and a general assessment of their merits." Id. at 1039. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Id. We do not have jurisdiction to justify our denial of a COA based on an adjudication of the actual merits of the claims. Id. Accordingly, we cannot deny an "application for a COA merely because [we believe] the applicant will not demonstrate an

5

entitlement to relief." Id. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id.

Even if we grant Cotton's application for COA, Cotton is not necessarily entitled to habeas relief. "To prevail on a petition for writ of habeas corpus, a petitioner must demonstrate that the state court proceeding 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Robertson v. Cockrell, 325 F.3d 243, 247-48 (5th Cir. 2003) (en banc) (quoting 28 U.S.C. § 2254(d)(1) (2000)). A state court's decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States . . . if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's decision "involves an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States . . . if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

6

In making the "unreasonable application" inquiry, this court must determine whether the state court's application of clearly established federal law was objectively unreasonable. Neal v. Puckett, 286 F.3d 230, 236 (5th Cir. 2002) (en banc), cert. denied, 123 S. Ct. 963 (2003). "We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect." Catalan v. Cockrell, 315 F.3d 491, 493 (5th Cir. 2002)(quoting Neal, 286 F.3d at 236). "The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state court decision is objectively unreasonable." Woodford v. Visciotti, -- U.S. --, 123 S. Ct. 357, 361 (2002).

Finally, for Cotton to be entitled to habeas relief based on a constitutional "trial" error, he must demonstrate not only that the state court's decision was contrary to or an unreasonable application of clearly established federal law, but also that it was harmful under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). Robertson v. Cain, 324 F.3d 297, 304 (5th Cir. 2003). "Under Brecht, a federal court may grant habeas relief on account of constitutional error only if it determines that the constitutional error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" Id. (quoting Brecht, 507 U.S. at 623 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

7

## 1. Comment on Cotton's Failure to Testify

Cotton first seeks a COA with respect to the district court's failure to grant habeas relief based on the prosecutor's allegedly improperly comment on Cotton's failure to testify in his own defense. During the State's closing argument at the guilt/innocence phase of trial, the prosecutor stated:

> One of the things – you know, they talked about what a liar [Watson] was and how you can't believe him and all that, but you know, he told you some things that really smack of the truth, and one of the things that is so indicative of the fact that he told you the truth was they never shook him about one event, and he makes admissions about some things, but they never shook him about one event in this case. They can't contradict him about one event in this case. And they've got an expert witness that could tell them if he lied. Marcus Cotton was with him.

Cotton's counsel timely objected to this statement as a comment on Cotton's failure to testify. The trial court overruled the objection.

The Fifth Amendment prohibits a prosecutor from commenting on a defendant's failure to testify, Griffin v. California, 380 U.S. 609, 615 (1968), if "the prosecutor's manifest intent in making the remark must have been to comment on the defendant's silence, or the character of the remark must have been such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." Jackson v. Johnson, 194 F.3d 641, 652 (5th Cir. 1999) (citing United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir. 1996)). "The prosecutor's intent is not

8

manifest if there is some other, equally plausible explanation for the remark." Grosz, 76 F.3d at 1326. As for whether a jury would naturally and necessarily construe a remark as a comment on the defendant's failure to testify, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so." Id. (quoting United States v. Collins, 972 F.2d 1385, 1406 (5th Cir. 1992) (quoting United States v. Carrodeguas, 747 F.2d 1390, 1395 (11th Cir. 1984)). Additionally, challenged comments are evaluated in the context of the trial within which they are made. United States v. Robinson, 485 U.S. 25, 33 (1988).

As a threshold matter, we grant Cotton a COA on this issue. Reasonable jurists could debate whether a constitutional violation occurred due to the prosecutor's reference to the defendant as an "expert witness" while arguing that the defense could not impeach the prosecution's principal witness.

The district court held that the state courts did not unreasonably apply clearly established federal law in denying relief on Cotton's claim. The district court concluded that the prosecutor's statement referred to the inability of the defense counsel to impeach Watson's credibility even though Cotton was available to assist them. The district court found that this statement was intended to be a "comment on the failure of the defense, as opposed to the defendant, to counter or explain the testimony presented or evidence introduced" and as such did not

9

violate the defendant's Fifth Amendment right against self-incrimination. Cotton v. Cockrell, Case No. H-01-CV-2201, at 41 (S.D. Tex. Oct. 30, 2002) (quoting Montoya v. Collins, 955 F.2d 279, 287 (5th Cir. 1992) (quoting United States v. Becker, 569 F.2d 951, 965 (5th Cir. 1978)).

We need not decide whether the state courts' conclusion was or was not in that respect an unreasonable application of clearly established federal law, however,[1] because habeas relief is unwarranted as the error was harmless. The comment Cotton complains of was "an isolated comment in a sea of evidence" incriminating him for Epstein's murder. Montoya, 955 F.2d at 287. Fellow victim Caruthers and the Jewish Community Center security guard Carla Chisholm both identified Cotton at trial as Epstein's attacker. Caruthers used his car to strike Cotton. When he was arrested, Cotton bore injuries consistent with such an event. Additionally, the state introduced testimony that, shortly after Epstein's murder, Cotton stated to an acquaintance that he had "killed a DA." Watson testified at length about his and Cotton's actions throughout the entire course of the robbery and murder. Finally, before the jury retired to deliberate, the trial court

---

[1] See Barrientes v. Johnson, 221 F.3d 741, 781 (5th Cir. 2000) (holding that prosecutor's comments that "He [the defendant] knows. He knows where the witness is as he sits there right now. He knows. He knows." were not improper); Lucas v. Johnson, 132 F.3d 1069, 1079 (5th Cir. 1998) (holding that prosecutor's comments that "Only one person does know [the identity of the handwriting], and that's [the defendant] Henry Lee Lucas." were not improper).

10

instructed the jury that they were not to consider Cotton's failure to testify during their deliberations.

Given the overwhelming evidence of guilt and the court's cautionary instruction to the jury, we conclude that the prosecution's statement had no substantial and injurious effect or influence in the determination of Cotton's guilt. See Nethery v. Collins, 993 F.2d 1154, 1159 (5th Cir. 1993) (holding overwhelming evidence of guilt and presence of curative instruction rendered harmless an impermissible comment by prosecutor).

In sum, even if the state courts' conclusion was an unreasonable application of law, the constitutional error was harmless.

## 2. Ineffective Assistance for Failure to Present Witnesses

Cotton next seeks a COA on his claim that his trial counsel provided ineffective assistance by failing to present at his second trial the testimony of two men, John Fourmy and Andrew Mansfield, who testified at the first trial. During Cotton's first trial, Fourmy and Mansfield testified that they were in the parking lot of the Jewish Community Center on the night of Epstein's murder and observed men riding bicycles. Both Fourmy and Mansfield testified that they did not see Cotton in the parking lot that night. Cotton argues that there was no rational basis for his trial counsel not to present their testimony, which supports what

he alleges would have been his best argument: that he was not at the scene of the crime when it occurred.

To establish ineffective assistance of counsel, Cotton must show that his counsel's performance was deficient and that he was actually prejudiced by the deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Deficient performance is determined by examining whether the challenged representation fell below an objective standard of reasonableness. <u>Kitchens v. Johnson</u>, 190 F.3d 698, 701 (5th Cir. 1999). "So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." <u>Smith v. Cockrell</u>, 311 F.3d 661, 668 (5th Cir. 2002) (internal citations and quotation marks omitted). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." <u>United States v. Jones</u>, 287 F.3d 325, 331 (5th Cir.) (quoting <u>Garland v. Maggio</u>, 717 F.2d 199, 206 (5th Cir. 1983)), <u>cert. denied</u>, 123 S. Ct. 549 (2002).

Even if Cotton establishes that his counsel's performance was deficient, he must also establish that "prejudice caused by the deficiency is such that there is a reasonable probability that the result of the proceedings would have been different." <u>Ransom v. Johnson</u>, 126 F.3d 716, 721 (5th Cir. 1997). Cotton must show that

12

the prejudice rendered the trial "fundamentally unfair or unreliable." Id. (quoting Lockhart v. Fretwell, 506 U.S. 364 (1993)).

Cotton has failed to make a substantial showing that his trial counsel provided ineffective assistance. While Fourmy and Mansfield did testify at Cotton's trial that ended with a hung jury, counsel was faced with a very different strategic landscape at Cotton's second trial. This is because, unlike at the first trial, Cotton's accomplice Watson had become available to the state after a plea bargain. Watson both placed Cotton at the scene of the crime and described in detail Epstein's robbery and murder at Cotton's hands.

Further, as noted by the district court in its thorough analysis, Fourmy's and Mansfield's testimonies contradicted each other and the testimony of the other witnesses. Cotton's trial counsel stated, in an affidavit, that he observed Fourmy testify during the first trial and felt that his demeanor was poor. Since neither Fourmy nor Mansfield witnessed the shooting or the robbery of either victim, and neither of them saw Epstein in the parking lot, their testimony that they also did not see Cotton in the parking lot was of limited value. In addition, neither witness recalled the date of the murder or the fact that there was a torrential rainstorm that night, and they could not agree on who else was with them in their car. Mansfield testified at the first

13

trial as a rebuttal witness for the state, contradicting or casting doubt on Fourmy's testimony.

Although Fourmy and Mansfield could have supplied weak evidence that Cotton was not present at the scene of Epstein's murder, the prosecution introduced the testimony of eyewitnesses Caruthers and Chisholm and accomplice Watson, all of whom identified Cotton. There was also testimony that Cotton had told others that he had killed a district attorney. Cotton's trial counsel opted to impeach Watson's credibility rather than try to establish that Cotton was not at the scene. Calling Fourmy and Mansfield did not fit into counsel's strategy. Notably, Cotton's counsel defended Cotton in both his first and second trial. He was uniquely qualified to assess the desirability of having Fourmy and Mansfield testify at the retrial. Given these circumstances, reasonable jurists could not debate or find wrong the conclusion that counsel's strategic decision is entitled to deference under Strickland. We deny Cotton's application for COA on this claim.

### 3. Trial Court Address to Jury Venire

Finally, Cotton seeks a COA for his claim based on comments made by the trial judge to the jury venire before voir dire regarding the history of the Texas death penalty. Cotton argues that the court's comments reduced the jury's sense of responsibility for imposing the death penalty and thus violated the Eighth Amendment as construed in Caldwell v. Mississippi, 472 U.S.

14

320 (1985). Cotton also appears to argue that the comments violated his rights under the Due Process Clause of the Fourteenth Amendment.

In his initial address to prospective jurors, the judge discussed, among other topics, the history of capital punishment in Texas. He described the development of capital punishment since the founding of the United States and the effect of the Eighth Amendment's prohibition on cruel and unusual punishment, as construed by the Supreme Court, on the procedures used in capital cases in Texas. He explained, among other things, that Texas at one time provided for capital punishment for several types of crimes, but now, only defendants convicted of certain categories of murder are eligible for the death penalty in Texas.

This claim, however construed, is procedurally barred. Cotton's counsel failed to object at trial to the comments he now argues are improper. During the state habeas proceedings, the court found that the failure to make a contemporaneous objection at trial resulted in a default of his Due Process claim. Alternatively, the state court found that the comments were not improper and even if improper they did not rise to the level of harmful error.

"[F]ederal courts are precluded from granting habeas relief where the last state court to consider the claims raised by the petitioner expressly and unambiguously based its denial of relief on an independent and adequate state-law procedural ground."

15

Haley v. Cockrell, 306 F.3d 257, 263 (5th Cir. 2003).  We have previously recognized that the Texas contemporaneous objection rule, upon which the state court relied in this case, is an adequate and independent state ground that procedurally bars federal habeas review.  Id. at 262 n.8.  Further, the fact that the state court alternatively addressed the merits of Cotton's claim does not prevent its procedural default determination from being an independent basis that bars review by the federal courts.  Foster v. Johnson, 293 F.3d 766, 790 (5th Cir.), cert. denied, 123 S. Ct. 625 (2002); Corwin v. Johnson, 150 F.3d 467, 473 (5th Cir. 1998) ("It is clear in this Circuit that alternative rulings do not operate to vitiate the validity of a [state] procedural bar that constitutes the [state court's] primary holding.").  Thus, to be entitled to relief on his Fourteenth Amendment claim, Cotton must either show cause for the default and resulting prejudice or that a fundamental miscarriage of justice would result.  See Haley, 306 F.3d at 263.

Cotton argues that the failure of his trial counsel to object to the remarks made by the trial judge constituted ineffective assistance of counsel that caused the default. Ineffective assistance of counsel may constitute "cause" for a procedural default.  Murray v. Carrier, 477 U.S. 478, 488 (1986). We do not agree that counsel's failure to object to the comments constituted deficient performance under Strickland.

16

The conduct of a judge violates due process "only if the judge appears to predispose the jury toward a finding of guilt or to take over the prosecutorial role." Derden v. McNeel, 978 F.2d 1453, 1459 (5th Cir. 1992) (en banc). The judge here outlined the history of capital punishment in Texas and described the limited circumstances under which the state can seek the death penalty. He expressed no opinion on the death penalty either generally or as it related to Cotton's crime. Nor did the trial judge encourage the jury to impose the death penalty in this case or even remotely suggest they should feel historically obliged to impose a death sentence should they find Cotton guilty. The comments simply provided a brief introduction to the Texas capital punishment scheme before the attorneys began conducting individualized voir dire examinations. These comments cannot be construed as predisposing the jury to impose a death sentence and violating Cotton's due process right. Reasonable jurists could not debate or find wrong that counsel did not unreasonably decline to object to these comments.

In any event, Cotton was not prejudiced by his counsel's failure to object. Throughout voir dire and during closing arguments the court and counsel repeatedly informed the jury that whether Cotton received a death sentence would be based on the jury's answers to the special issues submitted to them at the end of the punishment phase of the trial. Cotton's counsel was not constitutionally ineffective. In the absence of ineffective

17

assistance, Cotton cannot establish cause to excuse the procedural default of his due process claim.

Reasonable jurists could not debate or find wrong the district court's conclusion that Cotton's claim is procedurally barred. Therefore, we deny his application for a COA on his Due Process claim.

Additionally, Cotton is not entitled to a COA on his Caldwell claim. Cotton did not raise this theory during his state habeas proceedings. Federal courts cannot grant habeas relief unless the applicant has presented the claims to the state court and exhausted the remedies available in state court. 28 U.S.C. 2254(b) (2000); Martinez v. Johnson, 255 F.3d 229, 238 (5th Cir. 2001), cert. denied, 534 U.S. 1163 (2002). Where an applicant has not presented a legal theory to the state court it is not exhausted. Finley v. Johnson, 243 F.3d 215, 219 (5th Cir. 2001).

Reasonable jurists could not debate or find wrong the conclusion that Cotton cannot return to the Texas courts to present this claim. Texas's abuse of writ doctrine prohibits the filing of a successive petition to raise this claim, absent a showing of cause, if it could have been raised in his first habeas petition. Id.; see also Tex. Code Crim. Proc. 11.071, § 5(a) (stating Texas's abuse of writ doctrine). Cotton could have objected when the allegedly inappropriate comments were made by the judge, and he certainly could have raised the claim in his first state court

18

petition. Thus, Texas would bar a new petition that presented his Caldwell claim.

This bar constitutes an adequate and independent state ground that precludes federal review. Finley, 243 F.3d at 220. "If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." Id. Since reasonable jurists could not disagree or find wrong the conclusion that Cotton's Caldwell claim is defaulted, we deny his application for a COA on this claim.

## CONCLUSION

With respect to Cotton's claim that the prosecutor improperly commented on his failure to testify at trial, we grant his application for COA. We conclude, however, that the district court did not err in denying habeas relief on this claim because the prosecutor's comment did not rise to the level of harmful error. We affirm the district court's denial of relief on this claim. We deny Cotton's application for COA on his other claims and as such lack jurisdiction to review the district court's denial of habeas relief on these claims.

**AFFIRMED; COA DENIED.**