United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 15, 2003**

Charles R. Fulbruge III
Clerk

In the
## United States Court of Appeals
for the Fifth Circuit

m 03-20129

CHARLES D. RABY,

Petitioner-Appellant,

VERSUS

DOUG DRETKE,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
m H-02-0349

Before HIGGINBOTHAM, SMITH, and
CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Charles Raby applies for a certificate of appealability ("COA") pursuant to 28 U.S.C.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has (continued...)

[*](...continued)
determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

§ 2254. We deny the request.

## I.

In June 1994, a jury convicted Raby of the capital murder[1] of seventy-two-year-old Edna Franklin, who "had been severely beaten[,] repeatedly stabbed[,] and undressed . . . below the waist." *Raby v. Stone*, 970 S.W.2d 1 (Tex. Crim. App. 1998). Although Raby pleaded not guilty, the state introduced a signed statement in which he admitted to attacking Franklin and to the general circumstances surrounding the crime.[2] During the punishment phase, prosecution and defense witnesses testified to aggravating and mitigating factors, respectively. The jury answered that Raby posed a future danger and that sufficient mitigating evidence was not presented. Raby was sentenced to death.

## II.

Although Raby originally cited thirteen grounds for habeas corpus relief, he now seeks a COA based on the following: (1) ineffective assistance of counsel at the punishment phase; (2) improper prosecutorial comments regarding Raby's silence surrounding his arrest; (3) ineffective assistance of trial counsel during the guilt phase of the trial; (4) insufficient evidence; (5) the alleged unconstitutionality of Texas law in not allowing an intoxication defense; and (6) not being able to inform the jury about his future parole eligibility in a life sentence. The district court dismissed all of Raby's claims on a motion for summary judgment.

The first two grounds were dismissed because Raby had failed to exhaust his options in state proceedings. The third ground was dismissed based on procedural defaults and an application of *Strickland v. Washington*, 466 U.S. 668 (1984). The district court dismissed the fourth ground after determining that the evidence "was nearly compelling in showing that Franklin was killed during the commission or attempted commission of a robbery or sexual assault." The district court cited valid Supreme Court and Fifth Circuit precedent[3] stating the precise opposite of what Raby claimed in his fifth ground. Finally, the court cited *Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998), to dispel Raby's argument that he had the constitutional right to inform the jury as to his parole eligibility under a life

---

[1] TEX. PENAL CODE ANN. § 19.03(a)(2) ("A person commits an offense if he commits murder as defined under Section 19.02(b)(1) and . . . (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, or obstruction or retaliation.").

[2] The statement read, in part:

I went to a little store and bought some wine . . . . I drank the wine . . . . I knocked on the door. I did not hear anyone answer. I just went inside . . . . I walked into the kitchen and grabbed Edna. Edna's back was to me and I just grabbed her. I remember struggling with her and I was on top of her. I know I had my knife but I do not remember taking it out. We were in the living room when we went to the floor. I saw Edna covered in blood and underneath her. I went to the back of the house and went out the back door . . . .

---

[3] *Montana v. Egelhoff*, 518 U.S. 37 (1996); *Goodwin v. Johnson*, 132 F.3d 162, 190-91 (5th Cir. 1998) (applying *Egelhoff* to a capital case in which the defendant unsuccessfully claimed that a Texas statute foreclosing voluntary intoxication violated due process).

sentence.[4]

### III.
### A.

"[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Miller-El v. Cockrell*, 537 U.S. 322, ___, 123 S. Ct. 1029, 1039 (2003). To receive a COA, "a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" *Id*. (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citations omitted)).

### B.

As discussed in part IV, *infra*, the district court validly dismissed Raby's first three grounds because he failed to exhaust them at the state level. Assuming, *arguendo*, that such a procedural bar can be circumvented, none of Raby's substantive claims warrants a COA.

The district court correctly dismissed Raby's fourth, fifth, and sixth grounds. All three are foreclosed by relevant authorities. In addition to the cases cited previously, the

insufficiency claim has the primary problem that Raby confessed, fully, to attacking Franklin. The crime scene contains sufficient evidence to suggest that either a sexual assault or a robbery was attempted.

If one ignores the procedural bar of his third ground (ineffective assistance at the trial phase), Raby's third ground fails because it could not possibly overcome *Washington*'s second prong. Under *Washington*, a habeas petitioner "must show that his counsel's assistance was deficient and that the deficiency prejudiced him." *Hopkins v. Cockrell*, 325 F.3d 579, 586 (5th Cir. 2003).

Raby listed a variety of ways in which counsel[5] allegedly erred. Perhaps the most significant alleged error occurred when counsel conceded that Raby entered Franklin's house through a door rather than a window. Raby felt that his counsel premised this approach on a mistaken belief that entering through a door would preclude a finding of burglary.

Even assuming, *arguendo*, that such a tactical decision was ineffective assistance, there was no prejudice, because Raby cannot show that his attorney's malfeasance brought about his conviction. He signed a confession to every aspect of the relevant charge, with the exception of the explicit act of stabbing. Even during his attempt to exclude the statement, he admitted, in the words of the district court, "that his confession was knowing, voluntary, and true. Counsel were not deficient for choosing not to falsely argue that the

---

[4] The district court, and this court, in *Green*, distinguished a Texas life sentence from a South Carolina life sentence, as referenced in *Simmons v. South Carolina*, 512 U.S. 154 (1994). In *Simmons*, the Court held that a defendant had the right to inform the jury of the fact that a life sentence would not carry the right of parole. The jury, consequently, would have two options to remove a potentially dangerous individual from society. The Texas system, however, does not afford a life sentence without the possibility of parole. Thus, the *Simmons* right does not apply to a defendant such as Raby.

[5] Raby also alleges that one of his counsel, Fosher, "was impaired by debilitating pain and medication use during trial" to such an extent that Fosher could not remember any elements of the direct appeal.

3

confession was involuntary or untrue." Thus, Raby's signed statement precludes a finding of prejudice during the guilt phase.

The statement similarly blocks Raby's second ground, whereby he claims that the prosecution improperly commented on his silence surrounding his arrest. The prosecutor stated:

> [Is] it any wonder that a person who would attack a helpless, fragile, arthritic little old lady and stab her as many times as he did, brutalize her, slit her throat, ripped her clothes off, ripped her panties, anyone who would do something so cowardly, is it any wonder that when he runs, that he is silent after he runs? He doesn't go to the police. He isn't filled with remorse. When he gets the call that the police are coming, when he gets that call from his mother, he flees, indicating guilty knowledge. Is it any wonder that that type of coward would not fess up to all the details of his confession to the police? Of course not.

Even if one ignores the procedural bar[6] invoked by the district court, disregards the fact that Raby's counsel apparently did not object to the prosecutor's comment, and assumes that the prosecution improperly commented on Raby's silence, any possible error was harmless.[7]

---

[6] The procedural bar discussion appears in part IV, *infra*.

[7] *See Cotton v. Cockrell*, 343 F.3d 746, 752 (5th Cir. 2003) ("Given the overwhelming evidence of guilt and the court's cautionary instruction to the jury, we conclude that the prosecution's statement had no substantial and injurious effect or influence in the determination of [de

(continued...)

In *Cotton*, we granted a COA on the prosecution's referring to the defendant as an expert who could have refuted a co-conspirator's testimony, but we promptly dispatched of the point on grounds of harmless error. In Raby's situation, the prosecution's comment did not paint the defendant in a more negative light than in *Cotton*, and the harmlessness is similarly obvious.

Consequently, given the manner in which *Cotton* disposed of a similar prosecutorial comment, reasonable jurists could not debate the outcome of this issue. Finally, even assuming that the procedural default could be excused, we should not grant a COA based on the substance of the first claim, as discussed in part IV, *infra*.

IV.

Given the weight of his signed confession, Raby's strongest argument focuses on the punishment phase of his trial. The district court barred this ground based on Raby's failure to exhaust his state remedies, as required by 28 U.S.C. § 2254(b)(1)(B)(i). Raby attempts to excuse his procedural default by invoking § 2254(b)(1)(B)(ii), which provides an exception to the regular exhaustion requirement where "circumstances exist that render [state] process ineffective to protect the rights of the applicant." Raby claims that his state-appointed state habeas counsel, James Keegan, actively interfered with his attempts to pursue his habeas claims.[8] Raby lists eleven

---

[7](...continued)
fendant's] guilt.").

[8] Raby claims that "the CCA blocked his access to the courts by appointing a lawyer who refused to investigate and raise meritorious claims in the state

(continued...)

4

ways in which Keegan allegedly "thwarted" his attempts to present habeas claims in state court.[9] An unresponsive, insensitive lawyer does not excuse a procedural default under § 2254 (b)(1)(B)(ii).[10] The facts in *Martinez* are similar to those presented here, in regard to Raby's claims regarding Keegan.[11] Thus, *Martinez* forecloses debate on the use of alleged ineffectiveness of state habeas counsel to circumvent the state exhaustion requirement.

V.

Raby claims that his drug-addicted counsel failed to provide him with effective assistance. Specifically, Raby asserts that his attorney failed to investigate his case adequately and points to eighteen mitigating factors that such an investigation would have uncovered. He also asserts that his lawyer egregiously erred

---

[8](...continued)
habeas proceedings and precluding him from otherwise asserting those claims."

[9] These problems include failing to investigate extra-record claims, to hire an investigator, to request a separate evidentiary hearing, to forward court documents to Raby, and to accept Raby's mail.

[10] *See Martinez v. Johnson*, 255 F.3d 229, 239 n.10 (5th Cir. 1991) ("[U]nder these facts, failure to provide 'competent' counsel for a state habeas petition does not fall under the general catch-all exception provided in 28 U.S.C. § 2254(b)(1)(B)-(ii).").

[11] *Id.* at 238 n.9 ("(1) Rhodes did not respond to any of Martinez's letters, nor did he accept or return any of Martinez's phone calls; (2) Rhodes did not hire an investigator or an expert to develop extra-record evidence; (3) Rhodes did not send Martinez any of the copies of documents he filed on his client's behalf.").

by calling "notorious state expert Walter Quijano, who . . . prejudicially labeled Raby a 'psychopath.'"

Counsel's performance does not satisfy *Washington*'s requirements for ineffective assistance. Raby's trial counsel called witnesses to testify "to his troubled upbringing, including his mother's mental problems, his commitment to foster care and institutions, and episodes of physical abuse." *Raby v. Stone*, 970 S.W.2d 1, 3 (Tex. Crim. App. 1998). Additional witnesses testified "that [defendant] had a peaceful disposition and that his problems during incarceration had been provoked by jailers." *Id.* Thus, counsel did not underperform in attempting to mitigate Raby's sentence.

Although the decision to call Quijano did not help Raby, "judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Hopkins*, 325 F.3d at 586. Additionally, "informed strategic decisions are given a heavy measure of deference." *Boyle v. Johnson*, 93 F.3d 180, 187 (5th Cir. 1996) (citing *Mann v. Scott*, 41 F.3d 968, 984 (5th Cir. 1994)). Raby's counsel met with Quijano before the punishment phase and apparently (though wrongly) thought that his testimony would help establish that the Texas prison system would contain any future dangerousness on Raby's part. No COA is justified on this issue.

The application for COA is DENIED.

5