# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 17, 2012

Lyle W. Cayce
Clerk

Nos. 11-50621, 11-50632

UNITED STATES OF AMERICA

Plaintiff–Appellee

v.

MARCUS ROSENBERGER

Defendant–Appellant

Appeals from the United States District Court
for the Western District of Texas
7:10-CR-135-2
7:11-CR-60-1

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM[*]

A jury convicted Defendant–Appellant Marcus Rosenberger of conspiracy to commit, and aiding and abetting, mail and wire fraud for his role in a fraudulent real estate scheme. Rosenberger now appeals, bringing three claims of error. We find no error and affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50621, 11-50632

## I. Facts & Proceedings

A.    Facts

In 2009, Rosenberger and Jason Morrison went into business under the name Vanguard Properties. Together, they conducted a fraudulent scheme to "flip" distressed properties that were about to go into foreclosure. They would first identify a target home and then convince the owner to deed it over to them in exchange for their promise to prevent damage to the owner's credit history from a foreclosure. They would then sell the home (still subject to the original mortgage) and pocket the proceeds, all the while doing little or nothing to prevent foreclosure. To conceal their actions from the mortgagee, they refrained from recording their deeds in the public records. Typically, this would result in the mortgagee foreclosing, the new buyer being evicted, and the original owner suffering a foreclosure on his credit history. Morrison and Rosenberger flipped nine homes this way.

Rosenberger and Morrison divided the labor of the scheme. Morrison would find a distressed home and convince the owner to transfer it to Vanguard, then Rosenberger would advertise and eventually sell the home to the new buyer. The pair nevertheless held themselves out to sellers and buyers as equal business partners and agreed to share the profits equally.

After a dispute arose over finances, Rosenberger and Morrison divided up their portfolio of distressed properties in October 2009. Rosenberger took total responsibility for two of the homes in Midland, Texas, one on Harlowe Drive and the other on Amigo Drive. He continued the scheme with respect to those two homes, collecting payments from the buyers, failing to take any steps to prevent foreclosure, and evading inquiries from the original owners.

B.    Proceedings

No. 11-50621, 11-50632

Rosenberger and Morrison were each indicted on one count of conspiracy, one count of mail fraud, and ten counts of wire fraud. The substantive fraud counts arose from communications between Morrison and the lenders and from wire transfers from the buyers. Morrison eventually pleaded guilty; Rosenberger was charged with aiding and abetting those counts, and he went to trial.

The government adduced the testimony of the defendant's former business partner that Rosenberger was very experienced in real estate transactions. The government also called a number of the scheme's victims who testified about their dealings with Rosenberger. At the close of the government's case, the district court denied Rosenberger's Rule 29 motion for acquittal.

Rosenberger put on an affirmative defense in which he attempted to shift the blame to Morrison and to portray himself as an unwitting employee who simply sold properties for Morrison. In his testimony, Morrison downplayed Rosenberger's role in the scheme. At the conclusion of the trial, the district court denied Rosenberger's renewed Rule 29 motion, and the jury convicted him on all counts.

Rosenberger was sentenced to 33 months' incarceration. On appeal, he contends that (1) the evidence was not sufficient to prove the requisite *mens rea* or the confection of a conspiratorial agreement, (2) the trial evidence varied materially from the allegations of the indictment, and (3) the prosecutor made improper comments in both opening and closing argument.[1]

## II. Analysis

A.     Standards of Review

---

[1] After the guilty verdict, Rosenberger pleaded guilty, in a different case pending before the same court, to one count of mail fraud arising out of an unrelated 2006 real estate transaction. Rosenberger appeals the sentence from that conviction, contending that he should be resentenced if he is successful in reversing his conviction in this case. As we affirm his conviction here, that other appeal is moot.

No. 11-50621, 11-50632

Rosenberger preserved his challenge to the sufficiency of the evidence, so we review that claim de novo.[2]  We "view all evidence, whether circumstantial or direct, in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict, to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]  "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, in order to be sufficient."[4]  Thus, Rosenberger "faces an imposing standard of review."[5]

Rosenberger did not, however, object to a material variance between the evidence and the indictment or to any remarks by the prosecutor.  We therefore review these points for plain error.[6]  To show plain error, he must demonstrate that the error was clear or obvious and affected his substantial rights.[7]  "Even if he meets this tough standard, we will not reverse unless the error has a serious effect on the fairness, integrity, or public reputation of judicial proceedings."[8]

B.    Sufficiency of the Evidence

To prove conspiracy to commit mail fraud and wire fraud, the government must show an agreement between the defendant and another to commit those

---

[2] *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012).

[3] *Id.* (internal quotation marks omitted).

[4] *Id.* (internal quotation marks omitted).

[5] *United States v. Aubin*, 87 F.3d 141, 144 (5th Cir. 1996) (internal quotation marks omitted).

[6] *United States v. McCullough*, 631 F.3d 783, 793 (5th Cir. 2011).

[7] *E.g.*, *United States v. Barlow*, 568 F.3d 215, 219 (5th Cir. 2009).

[8] *Id.* (internal quotation marks omitted).

crimes.[9]  The agreement "need not be shown to have been explicit" and "can instead be inferred from the facts and circumstances of the case."[10]  To prove both conspiracy and aiding and abetting mail and wire fraud, the government must show an intent to defraud.[11]  "Circumstantial evidence can be sufficient to prove fraudulent intent in mail and wire fraud cases."[12]  "Typically, the same evidence will support both a conspiracy and an aiding and abetting conviction."[13]

Rosenberger challenges the sufficiency of the evidence regarding the requisite intent to defraud and the existence of a conspiratorial agreement between him and Morrison.  He claims that Morrison's testimony exculpated him and that the circumstantial evidence was at least as consistent with his version of the facts as with the government's version.  Rosenberger insists that his convictions must be reversed because evidence equally consistent with fraudulent or innocent intent cannot sustain a fraud conviction as a matter of law.[14]

When we review the record under the appropriate standard of review, we are satisfied that the jury had ample circumstantial evidence from which to infer a conspiratorial agreement and intent to defraud.  Rosenberger and Morrison intended to share their ill-gotten gains equally and held themselves out as business partners while perpetuating the fraud.  Even if their division of labor within the conspiracy kept Rosenberger from knowing all of the details of

---

[9] *United States v. Ingles*, 445 F.3d 830, 838 (5th Cir. 2006).

[10] *Iannelli v. United States*, 420 U.S. 770, 777 n.10 (1975).

[11] *See Ingles*, 445 F.3d at 838; *United States v. Rivera*, 295 F.3d 461, 466 (5th Cir. 2002).

[12] *Crowe v. Henry*, 115 F.3d 294, 297 (5th Cir. 1997).

[13] *United States v. Vasquez*, 677 F.3d 685, 695 (5th Cir. 2012) (internal quotation marks omitted).

[14] *See United States v. Reveles*, 190 F.3d 678, 686 (5th Cir. 1999) ("When the evidence is in equipoise, as a matter of law it cannot serve as the basis of a finding of knowledge.").

Morrison's role, a finding of fraudulent intent or conspiratorial agreement is not precluded.[15]  Moreover, the jury heard ample evidence from which to infer Rosenberger's guilty mind.  As the record unequivocally establishes that Rosenberger was a sophisticated and experienced real estate entrepreneur, the jury easily could have concluded that he could not have been deceived or misled by Morrison about the nature of their business or otherwise have been unaware of its true nature.  And numerous sellers and buyers who were victims of the scheme testified regarding communications with Rosenberger that negate any inference of innocence or obliviousness.  In particular, Rosenberger's actions with respect to the Harlowe Drive and Amigo Drive properties after he and Morrison split in October 2009 were entirely consistent with the scheme.  On the totality of the evidence, the jury could have concluded beyond a reasonable doubt that Rosenberger knew what was going on all along.

Although Morrison's testimony could have undermined a finding of Rosenberger's fraudulent intent,  the jury did not have to believe it.  Morrison was impeached by his guilty pleas to unrelated charges of burglary and failure to register as a sex offender, as well as by the charges arising out of his dealings with Rosenberger and the victims of their fraud.  Indeed, if Rosenberger had lacked fraudulent intent, then Morrison would have had no one with whom to conspire.  The jury acted well within the confines of logic and the law by rejecting that testimony.

---

[15] *United States v. Sneed*, 63 F.3d 381, 385-86 (5th Cir. 1995) ("The members of a conspiracy which functions through a division of labor need not be privy to the details of each aspect of the conspiracy.") (alteration and internal quotation marks omitted).

In short, Rosenberger has not overcome the imposing burden of sufficiency review. Viewing all evidence in the light most favorable to the verdict, the record supports affirmance.[16]

C.     Material Variance

Rosenberger also contends that the trial evidence materially varied from the allegations of the indictment because his handling of the homes on Harlowe Drive and Amigo Drive after October 2009 was not charged as an overt act. "A material variance occurs when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense."[17] A variance is material if it prejudices the defendant's substantial rights by surprising him at trial.[18]

The indictment charged a conspiracy lasting from March 2009 to March 2010 and affecting the Harlowe Drive and Amigo Drive properties, among others. Thus, Rosenberger could not have been surprised at trial by evidence pertaining to those properties during that period. Moreover, his conduct was entirely consistent with the charged scheme, not at variance with it. Although the discrete facts were not specifically articulated in detail in the indictment, "the government is not limited to the overt acts pleaded in the indictment in

---

[16] For the same reasons, we reject Rosenberger's alternative request for a new trial, under 28 U.S.C. § 2106. Even assuming that we could grant a new trial despite Rosenberger's failure to request one pursuant to Federal Rule of Criminal Procedure 33, *see United States v. Nguyen*, 507 F.3d 836, 838-39 (5th Cir. 2007), we perceive no basis for such relief, *see United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) ("In this Circuit, the generally accepted standard is that a new trial ordinarily should not be granted unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict.") (internal quotation marks omitted).

[17] *United States v. Mitchell*, 484 F.3d 762, 769 (5th Cir. 2007) (internal quotation marks and citation omitted).

[18] *United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010).

proving a conspiracy, but may show other acts of conspirators occurring during its life."[19]  We perceive no error.

D.     Improper Prosecutorial Remarks

Finally, Rosenberger raises a number of purportedly improper prosecutorial comments, none of which he objected to at trial.  Reviewing for plain error, we find none.

First, Rosenberger challenges a remark touching on his constitutional right not to testify at trial.  The Fifth Amendment prohibits a remark if "the prosecutor's manifest intent in making the remark must have been to comment on the defendant's silence, or the character of the remark must have been such that the jury would naturally and necessarily construe it as a comment on the defendant's silence."[20]  "The prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark."[21]

We begin by examining the challenged remark in full context.[22]  At trial, the government introduced and played recordings of telephone conversations involving Rosenberger, and he did not object.  The jury thus had the opportunity to hear him speak and to draw inferences about his mental capabilities.  In closing argument, defense counsel suggested to the jury that Morrison had taken advantage of Rosenberger's limited faculties.  To refute this argument, the prosecutor referred the jury to the recordings:

> Don't be misled.  Don't be fooled by this notion that, "Gee, I just don't know"; he's just a fourth grader; he doesn't know.

---

[19] *United States v. Carlock*, 806 F.2d 535, 550 (5th Cir. 1986).

[20] *Cotton v. Cockrell*, 343 F.3d 746, 751 (5th Cir. 2003) (internal quotation marks omitted).

[21] *Id.*

[22] *See id.* ("[C]hallenged comments are evaluated in the context of the trial within which they are made.").

No. 11-50621, 11-50632

> You heard recordings of Mr. Rosenberger.  He does not have to take the stand.  It's not his burden.  It's my burden.  But you had an opportunity to listen to him on the recordings, and you can make that judgment for yourself.
>
> Does he sound like any fourth grader you've ever met?  Or does he sound like a grown man who knows what he's talking about?

Read as a whole, the prosecutor's remarks were directed at the recorded speech that the jury actually heard, not at Rosenberger's silence.  This is a plausible explanation for the remark, negating any manifest intent to comment on Rosenberger's silence.  Neither is the remark one that the jury would necessarily construe as commenting on Rosenberger's silence.  But, even if we were to take a narrower view and conclude that alluding to Rosenberger's right to remain silent was unnecessary and improper, any conceivable prejudice to Rosenberger was negligible at most and could not have affected his substantial rights.[23]

Neither can we conclude that the rest of the remarks of which Rosenberger complains constituted error, much less reversible plain error.  The record supports the prosecutor's remarks about Rosenberger's real estate acumen and mathematical skill, and about his limitations in other areas.  The prosecutor's reference to a witness's military service was relevant in the context of the trial and cannot plausibly be interpreted as bolstering that witness's credibility.  And, the references to the sub-prime mortgage market and to achieving justice for Rosenberger's victims fall well short of any realistic likelihood of prejudice.[24]

---

[23] *See United States v. Delgado*, 672 F.3d 320, 337 (5th Cir. 2012); *see also United States v. McMillan*, 600 F.3d 434, 452 (5th Cir. 2010) (finding no error "even if we assume that the prosecutor's comments improperly reflected on the defendants' failure to testify" because "the comments were more an isolated remark than a call for the jury to focus on the fact that the defendants did not testify").

[24] Rosenberger's reliance on *United States v. Payne*, a Sixth Circuit case, is misplaced because of its significantly more egregious facts.  2 F.3d 706, 714 (6th Cir. 1993) (reversing conviction because of prosecutor's "calculated effort used to evoke strong sympathetic emotions

In summary, we affirm Rosenberger's convictions and sentences on all counts.

AFFIRMED.

---

for Christmas-time activity, the poor, pregnant women, diaperless children, and laid-off employees").