United States Court of Appeals
Fifth Circuit

**F I L E D**

April 11, 2006

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals*
*for the Fifth Circuit*

No. 05-30155

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DENNIS INGLES,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, DeMOSS and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Dennis Ingles was convicted of mail fraud, wire fraud, and conspiracy to commit mail and wire fraud because of his involvement in an arson scheme to defraud State Farm Insurance Company. Dennis challenges his convictions and sentences on three primary grounds, claiming that: 1) there is insufficient evidence to support his convictions; 2) the district court erred in ordering excessive restitution; and 3) the district court made improper factual determinations at sentencing. We affirm in part, reverse in part, and remand for resentencing.

# I

Ronald Ingles, son of appellant Dennis Ingles, held legal title to two camp houses near Lake Bistineau in Louisiana. Willie Hilson, Dennis's friend of eighteen years, set fire to one of the camp houses late one night. After leaving the scene, Hilson called Dennis and told him that "it was over with." The next morning, when Dennis's girlfriend, Michelle Wilhite, asked Dennis why Hilson called the night before, Dennis said, "If Willie did what he said he was gonna do, then the camp was burned down."

The next day, Dennis's son Ronald filed a claim with State Farm under his homeowner's insurance policy for the damaged camp house and its contents. Under the policy, State Farm was obligated to pay the lienholder of the property, Mid-State Homes, regardless of the fire's cause and was required to pay Ronald unless he was involved in the arson. As part of the claims process, State Farm mailed at least three letters to Ronald and one letter to Mid-State Homes. State Farm eventually made two payments as a result of the fire: one to Mid-State Homes for $11,889.65, the amount Ronald owed on the mortgage at the time of the fire, and the other to Michelle Wilhite for $4,802.09 under her homeowner's policy for personal property that was destroyed in the fire.[1] State Farm, however, did not pay Ronald because it concluded that he was involved in the arson.

After discovering that the fire was set intentionally, the government charged Ronald,

---

[1]Dennis disputes the $4,802.09 figure, a claim which we address later in the opinion.

Dennis, and Hilson with one count of wire fraud[2] based on the telephone conversation between Dennis and Hilson, four counts of mail fraud[3] based on the four letters mentioned above, and conspiracy to commit mail and wire fraud.[4] Hilson pleaded guilty to the wire fraud charge, but Dennis and Ronald proceeded to trial.

At trial, both Dennis and Hilson testified that Ronald had nothing to do with the arson. Hilson testified that several weeks before the fire, Dennis, alone, asked him to set fire to Ronald's camp for $5,000, and Hilson understood this payment would come from insurance proceeds. However, the evidence also revealed that Dennis was not legally entitled to any of the insurance proceeds. Both Dennis and Bobby Patterson Kerr, a State Farm claims representative, testified that Dennis never filed a claim with State Farm for any damages arising out of the fire and that even if he had, State Farm would not have paid Dennis because he was not the owner of either the property or the insurance policy.

Wilhite testified that Dennis instigated the acquisition of the camp houses and had given Ronald money to purchase them. She testified that Dennis had told her that the property really belonged to him and that he put it in Ronald's name because he (Dennis) was planning to file for bankruptcy. She testified that Dennis made most of the payments and took care of the maintenance. Ronald initially denied that his father helped pay for the camp, but he later admitted that Dennis had made a few payments. Ronald also testified that,

---

[2]18 U.S.C. § 1343; *Id.* § 2.

[3]18 U.S.C. § 1341; *Id.* § 2.

[4]18 U.S.C. § 371.

although he was unsure exactly how often Dennis went to the camp, he thought it was about once a month, more frequently than Ronald.

The jury acquitted Ronald but convicted Dennis on all counts. United States Probation determined in a presentence report ("PSR") that Dennis's base offense level was 24 pursuant to U.S.S.G. § 2K1.4(a)(1)(B) because the fraud involved arson of a "dwelling." The PSR also recommended: 1) a two-level upward adjustment pursuant to § 3B1.1(c) because Dennis was the organizer of the conspiracy; 2) a two-level upward adjustment pursuant to § 3C1.1 because Dennis obstructed justice by threatening a witness, Michelle Wilhite; and 3) a two-point increase in Dennis's criminal history score pursuant to § 4A1.1(d) because he was on probation at the time he became involved in the conspiracy. Dennis objected to the recommendations in the PSR.

At sentencing, which occurred after the United States Supreme Court decided *United States v. Booker*,[5] the district court adopted each of the recommendations in the PSR except for the recommended obstruction of justice and leadership enhancements. Dennis was sentenced to prison terms of 60 months for the conspiracy count and 78 months for the mail and wire fraud counts, to run concurrently. The district court also imposed a three-year term of supervised release and ordered Dennis to pay $16,691.74 in restitution to State Farm. Dennis timely filed a notice of appeal.

---

[5]543 U.S. 220 (2005).

## II

Dennis first challenges the sufficiency of the evidence to support his four mail fraud convictions under 18 U.S.C. § 1341.[6] We review a claim of insufficiency of the evidence in the light most favorable to the verdict, affording the government the benefit of all reasonable inferences.[7] "The verdict must be affirmed if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt."[8] We conclude that there is insufficient evidence to support Dennis's mail fraud convictions.

"The mail fraud statute declares it a federal crime to use the mail in furtherance of a scheme to defraud . . . ."[9] "Each separate use of the mails to further a scheme to defraud is a separate offense."[10] To sustain a mail fraud conviction, the government must prove "(1) a scheme to defraud (2) which involves a use of the mails (3) for the purpose of executing the

---

[6]Section 1341 provides, in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, . . . or knowingly causes to be delivered by mail or such carrier . . . any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

[7]*See United States v. Gonzales,* 121 F.3d 928, 935 (5th Cir. 1997).

[8]*Id.*

[9]*United States v. McClelland,* 868 F.2d 704, 706 (5th Cir. 1989).

[10]*Id.*

5

scheme."[11]  However, "[t]he government need not prove that the accused used the mails himself or actually intended that the mail be used."[12]  The mail fraud statute requires only that the mailing caused by the defendant's actions be "incident to an essential part of the scheme."[13]  One "causes" the mails to be used "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen  . . . ."[14]  To show that a mailing is "incident to an essential part of the scheme," the government must demonstrate that "completion of the alleged scheme . . . depend[ed] in some way on the information or documents that passed through the mail."[15]

In *United States v. McClelland*, for example, an insured restaurant-owner devised a scheme to defraud his insurance company by causing an explosion adjacent to his restaurant.[16]  After the explosion, the insurance company began processing McClelland's claim, and letters were mailed as part of the claims process—letters that later formed the

---

[11]*Id.*; *see also Neder v. United States*, 527 U.S. 1, 22-25 (1999) (interpreting 18 U.S.C. § 1341 as requiring a material misrepresentation, omission or falsehood).

[12]*McClelland*, 868 F.2d at 707; *United States v. Pazos*, 24 F.3d 660, 665 (5th Cir. 1994); *Pereira v. United States*, 347 U.S. 1, 8 (1954) ("It is not necessary that the scheme contemplate the use of the mails as an essential element.").

[13]*United States v. Green*, 494 F.2d 820, 824 (5th Cir. 1974) (internal citations and quotation marks omitted).

[14]*Pereira*, 347 U.S. at 8-9.

[15]*United States v. Tencer*, 107 F.3d 1120, 1125 (5th Cir. 1997).

[16]868 F.2d at 706.

6

basis of McClelland's mail fraud convictions. On appeal, we concluded that the mailings were in furtherance of the scheme because "[n]o one who makes a claim on a fire policy could reasonably expect an insurer to make payment without [supporting] documentation [being sent in the mail]."[17] Because we determined that the success of McClelland's scheme depended "in some way" on each letter that was mailed, we affirmed his mail fraud convictions.[18]

The facts in this case, however, are distinguishable from *McClelland*. Here, unlike *McClelland*, the insured party (Ronald) was not involved in the scheme, and therefore the letters that form the basis of Dennis's mail fraud convictions were not the result of a fraudulent claim.[19] State Farm concedes that it was obligated to pay Mid-State Homes regardless of the cause of the fire. As for Ronald, the evidence demonstrated that he had no knowledge of Dennis's scheme to defraud State Farm, and the jury acquitted him. As a result, Ronald's claim was not fraudulent.

Dennis argues that because the claims submitted by Ronald and Mid-State were not

---

[17]*Id.* at 708.

[18]*Id.* at 707-09; *see also, e.g.*, *United States v. Creech*, 408 F.3d 264, 269, 274 (5th Cir. 2005) (affirming a mail fraud conviction based on a mailing caused by an insured party's arson-related scheme to defraud); *United States v. Pazos*, 24 F.3d 660, 665 (5th Cir. 1994) (same); *United States v. Nguyen*, 28 F.3d 477, 481 (5th Cir. 1994) (same); *United States v. Martino*, 648 F.2d 367, 394, 397-406 (5th Cir. 1981) (same); *Blackwell v. United States*, 405 F.2d 625, 626 (5th Cir. 1969) (same).

[19]*See Martino*, 648 F.2d at 398-99 (concluding that an insurance claim was not fraudulent because the insured was not "involved in the arson" and did not have "any knowledge of the plan to burn the building for the insurance").

fraudulent, they cannot form the basis for his mail fraud convictions. Dennis's position finds support in our opinion in *United States v. Martino*,[20] a case also involving an arson scheme. In *Martino*, John Lostracco, a real estate agent, arranged the sale of his in-laws' house to Lostracco's co-conspirators, who were to burn it down for the insurance proceeds after the sale was consummated. The in-laws did not have any knowledge of the scheme. Although a contract to sell was executed, the scheme went awry when the co-conspirators burned the house before title transferred, after which the in-laws innocently filed a claim with their insurance company. Lostracco was convicted of mail fraud based on the mailings between the insurance company and the in-laws. On appeal, we reversed Lostracco's mail fraud convictions because there was "no evidence that the [in-laws] submitted a claim . . . intending to deliver over or share the insurance payment with any member of the [scheme]."[21] Instead, the evidence revealed that the in-laws' "claim was not fraudulent; their policy was valid and they were not aware of the arson."[22] It was not enough that Lostracco and his co-conspirators hoped that the in-laws would share the proceeds and had actually coerced and threatened them into doing so—the in-laws' legitimate, non-fraudulent claim could "not be transformed into mail fraud and imputed to the enterprise."[23]

The government argues that *Martino* is distinguishable, contending that Dennis was

[20]648 F.2d 367 (5th Cir. 1981).

[21]*Id.* at 399.

[22]*Id.*

[23]*Id.*

8

the *de facto* owner of the property, citing evidence that suggests the camp houses were purchased by and for Dennis in Ronald's name in an effort to shield these assets from Dennis's possible bankruptcy. The government contends that even though Ronald was not aware of Dennis's scheme to burn down one of the houses, Ronald would turn over any insurance proceeds arising from a fire to Dennis. Hence, the government argues, Dennis violated the mail fraud statute when Ronald caused mailings in innocent furtherance of Dennis's scheme to defraud. We conclude that *Martino* is indistinguishable and requires that we reverse Dennis's mail fraud convictions.

Ronald, like the in-laws in *Martino*, did not have knowledge of the scheme to defraud, and therefore his insurance claim was not fraudulent. The fact that Dennis promised to pay Hilson for the arson out of insurance proceeds is insufficient to establish mail fraud because there was no evidence that Ronald knew that there had been arson when he submitted a claim to State Farm.[24] Like *Martino*, the evidence only demonstrates that Dennis hoped or expected that Ronald would share the insurance proceeds with him. Dennis's hope, however, is too attenuated. Ronald's legitimate, non-fraudulent claim caused the letters at issue to be generated. There was no evidence that Ronald agreed or was obligated to remit insurance proceeds to Dennis.

---

[24]*See, e.g.*, *United States v. Creech*, 408 F.3d 264, 269 (5th Cir. 2005) (holding that a claims-related mailing caused by an insured party's arson scheme to defraud can support a mail fraud conviction); *United States v. Pazos*, 24 F.3d 660, 665 (5th Cir. 1994) (same); *United States v. Nguyen*, 28 F.3d 477, 481 (5th Cir. 1994) (same); *United States v. McClelland*, 868 F.2d 704, 708-09 (5th Cir. 1989) (same); *Martino*, 648 F.2d at 394, 397-406 (same); *Blackwell v. United States*, 405 F.2d 625, 626 (5th Cir. 1969) (same).

The mail fraud statute "does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate [other] law."[25] Accordingly, Dennis can only be convicted of mail fraud if the letters at issue were "for the purpose of executing" his scheme to defraud State Farm.[26] The mailings in this case were no more "for the purpose of executing" a scheme to defraud than were the mailings in *Martino*.[27]

This conclusion is also supported by our opinion in *United States v. Tencer*.[28] In *Tencer*, an owner and an employee of a chiropractic clinic were convicted on multiple counts of mail fraud based on their scheme to submit fraudulent claims to insurance companies and obtain proceeds for unperformed services. On appeal, we reversed the mail fraud convictions because the government "failed to produce any evidence tending to connect th[e mailings] with fraudulent claims."[29] We specifically "decline[d] to endorse a broad reading of § 1341's mailing requirement that would relieve the government of the burden of proving

---

[25]*Kann v. United States*, 323 U.S. 88, 95 (1944).

[26]*McClelland*, 868 F.2d at 706.

[27]*Cf., e.g., United States v. Castile*, 795 F.2d 1273, 1281 (6th Cir. 1986) (holding that a mail fraud conviction could not stand because mailings by the insurance company sent as part of its investigation into possible arson served to defeat, rather than further, the defendant's scheme); *United States v. LaFerriere*, 546 F.2d 182, 185-87 (5th Cir. 1977) (holding that a letter by an attorney for the victim of a fraud to a defendant threatening legal action and demanding a return of the funds did not support a mail fraud conviction).

[28]107 F.3d 1120 (5th Cir. 1997).

[29]*Id.* at 1126.

10

that mailings underlying mail fraud counts are related to the fraud being perpetrated."[30]

Here, the government failed to identify a fraudulent insurance claim, and consequently, cannot sustain Dennis's mail fraud convictions.

We recognize that both innocent mailings (*i.e.*, those that do not contain a misrepresentation)[31] and "mailings between innocent parties"[32] can support a mail fraud conviction. However, the mail fraud statute does not merely require that a scheme to defraud cause a mailing; it also requires that "the mailing that is caused [be] a part of the execution of the fraud or [be] incident to an essential part of the scheme."[33] Although the government produced sufficient evidence to connect Dennis to a scheme to defraud, it falls short of mail fraud.[34] The Supreme Court has noted, "the [government's] showing, however convincing,

---

[30]*Id.*

[31]*See Schmuck v. United States*, 489 U.S. 705, 714-15 (1989); *Tencer*, 107 F.3d at 1125 ("Even a routine or innocent mailing may supply the mailing element as long as it contributes to the execution of the scheme."); *Parr v. United States*, 363 U.S. 370, 390 (1960) ("[I]mmunization from the ban of the [mail fraud] statute is not effected [sic] . . . by the fact that the things [the defendants] caused to be mailed were 'innocent in themselves,' if their mailing was 'a step in a plot.'").

[32]*See United States v. Bonansinga*, 773 F.2d 166, 169 (7th Cir. 1985).

[33]*United States v. Green*, 494 F.2d 820, 824 (5th Cir. 1974) (internal citations and quotation marks omitted); *see, e.g., United States v. Castile*, 795 F.2d 1273, 1281 (6th Cir. 1986) (holding that mail fraud conviction could not stand because mailings by insurance company sent as part of its investigation into possible arson served to defeat, rather than further, defendant's scheme); *United States v. LaFerriere*, 546 F.2d 182, 185-87 (5th Cir. 1977) (holding that letter by an attorney for the victim of a fraud to a defendant threatening legal action and demanding a return of the funds did not support a mail fraud conviction).

[34]*See Tencer*, 107 F.3d at 1126-27 n.1 (rejecting the government's argument that an innocent mailing supported the defendant's mail fraud conviction because "the government has failed to offer any explanation as to how the [mailing] furthered the scheme to defraud").

11

that state crimes . . . were committed does not establish the federal crime of using the mails to defraud, and, under our vaunted legal system, no man, however bad his behavior, may be convicted of a crime of which he was not charged, proven and found guilty in accordance with due process."[35] There is evidence that Dennis was involved in a scheme to defraud, but "[t]here is no evidence of [his] involvement in a mail fraud scheme . . . *because no mail fraud occurred.*"[36] Therefore, we reverse Dennis's mail fraud convictions.

Dennis also argues that the evidence is insufficient to support his convictions for conspiracy and wire fraud for the same reason it does not support his convictions for mail fraud. This argument lacks merit. To prove conspiracy to commit wire fraud under 18 U.S.C. § 371, the government must show "(1) an agreement between appellant[ ] and others (2) to commit the crime of [wire fraud], and (3) an overt act committed by one of the conspirators in furtherance of that agreement."[37] Additionally, the government must demonstrate that the defendant acted with the intent to defraud.[38] To prove wire fraud under 18 U.S.C. § 1343, the government must prove: "(1) a scheme to defraud and (2) the use of, or causing the use of, wire communications in furtherance of the scheme."[39] Hilson testified

---

[35]*Parr*, 363 U.S. at 393-94.

[36]*United States v. Martino*, 648 F.2d 367, 399 (5th Cir. 1981) (emphasis added).

[37]*United States v. Garza*, 429 F.3d 165, 168 (5th Cir. 2005) (internal citations and quotation marks omitted).

[38]*Id.* at 168-69.

[39]*United States v. Gray*, 96 F.3d 769, 773 (5th Cir. 1996).

12

that he and Dennis discussed and planned the arson on several occasions and that Dennis

gave him a key for that purpose. Hilson also testified that he telephoned Dennis to inform

him that the arson was complete—testimony which was corroborated both by Wilhite and

telephone records. This evidence is sufficient to sustain Dennis's conspiracy and wire fraud

convictions. The district court sentenced Dennis to 78 months for the mail and wire fraud

convictions. Because it is unclear what portion of that sentence was for the wire fraud

conviction, as distinguished from mail fraud, we remand for resentencing.

### III

Dennis next challenges the district court's restitution order, arguing that it requires

him to pay an amount not proven at trial and in excess of that of his co-defendant, Willie

Hilson. The legality of a restitution order is reviewed *de novo*, and, if the sentence is

permitted by law, the award is reviewed for abuse of discretion.[40]

Pursuant to 18 U.S.C. § 3663A,[41] the district court ordered Dennis to pay $16,691.74

in restitution to State Farm: $11,889.65 for the amount State Farm paid to Mid-State Homes

and $4,802.09 for the amount State Farm paid to Michelle Wilhite. Dennis argues that the

restitution order violates *Booker* because it is based on an amount not proven at trial or

---

[40]*United States v. Reese*, 998 F.2d 1275, 1280 (5th Cir. 1993); *United States v. Myers*, 198 F.3d 160, 168 (5th Cir. 1999); *United States v. Hughey*, 147 F.3d 423, 436 (5th Cir. 1998) ("Once we have determined that an award of restitution is permitted by the appropriate law, we review the propriety of a particular award for an abuse of discretion."); *see also United States v. Ingram*, No. 04-10803, 2005 WL 1098461, at *1 (5th Cir. May 10, 2005) (reviewing in a post-*Booker* case the propriety of a restitution award for abuse of discretion).

[41]Section 3663A requires that a district court enter a restitution order when a defendant is found to have committed an offense against property.

admitted by him. Dennis's argument is foreclosed by our decision in *United States v. Garza,* where we held that "judicial fact-finding supporting restitution orders does not violate the Sixth Amendment."[42]

Dennis also challenges the amount of the restitution order, arguing that the district court ordered his co-defendant, Willie Hilson, to pay less restitution, and the district court had no basis for its conclusion that State Farm paid Wilhite $4,802.09 for her claim. We find both arguments unpersuasive. A district court may "consider the relative degrees of responsibility of co-defendants in imposing restitution obligations" and therefore, "[t]he simple fact that like punishment was not imposed on [Hilson] does not offend the constitution."[43]

District courts have significant discretion in evaluating a PSR's reliability.[44] A PSR "generally bear[s] indicia of reliability sufficient to permit reliance thereon at sentencing."[45] Although Wilhite testified at trial that State Farm paid her "$3,400, thirty-something hundred" for her claim, the PSR "revealed [that] State Farm . . . paid [her] $4,802.09 as a result of th[e] arson." The district court was permitted to adopt this finding in Dennis's PSR

---

[42]429 F.3d at 170 (citing *United States v. Sosebee*, 419 F.3d 451, 462 (6th Cir. 2005) ("[T]he *Booker* Court's holding that the Sentencing Guidelines are now merely advisory does not affect orders of restitution.")).

[43]*United States v. Ryan*, 874 F.2d 1052, 1055 (5th Cir. 1989) (holding that there is no constitutional violation when co-defendants are ordered to pay differing amounts of restitution).

[44]*United States v. Young*, 981 F.2d 180, 185 (5th Cir. 1992).

[45]*United States v. Gracia*, 983 F.2d 625, 629-30 (5th Cir. 1993).

without further inquiry, absent rebuttal evidence, if the PSR contained a sufficient evidentiary basis and indicia that the information was reliable.[46] To show that he was sentenced on the basis of unreliable information, Dennis is required to prove that the information used at sentencing is materially untrue.[47] Dennis has never argued or presented evidence that the $4,802.09 figure is incorrect, but only that it was not proven at trial. Consequently, the district court did not abuse its discretion in calculating the amount of Dennis's restitution order.

## IV

Dennis next argues that the district court improperly found that he committed the conspiracy while on parole and that the burned structure was a "dwelling," findings which increased the sentencing range under the Guidelines.[48] Although the Sentencing Guidelines are now advisory, we continue to review the district court's application of the Guidelines *de novo* and its factual findings for clear error.[49] If a factual finding is plausible in light of the record as a whole, there is no clear error.[50] We conclude that the district court did not clearly err in making its factual determinations.

---

[46]*United States v. Cabrera*, 288 F.3d 163, 172-74 (5th Cir. 2002).

[47]*See, e.g.*, *United States v. Cothran*, 302 F.3d 279, 286 (5th Cir. 2002).

[48]*See* U.S.S.G. § 4A1.1(d) (adding two criminal history points when the defendant commits the offense while on parole); U.S.S.G. § 2K1.4(a)(1) (increasing the base offense level by four when the offense involves an arson of a "dwelling").

[49]*United States v. Villegas*, 404 F.3d 355, 361-62 (5th Cir. 2005); *United States v. Villanueva*, 408 F.3d 193, 203 n.9 (5th Cir. 2005).

[50]*United States v. Parker*, 133 F.3d 322, 330 (5th Cir. 1998).

15

Dennis was on probation with the Webster Parish Sheriff's Office for a prior offense from May 20, 2002 through May 20, 2003. Hilson testified that Dennis first approached him about the arson in late April 2003. Additionally, Dennis admitted during direct examination that he had a conversation with Hilson about the arson in March 2003. The district court's finding that Dennis was on probation at the time the conspiracy began is well-supported by the evidence, and not clear error.

We have previously stated that a "dwelling" is "'an enclosed space, permanent or temporary, in which human beings usually stay, lodge, or reside.'"[51] "[W]hether by vacancy, physical deterioration, altered use, or otherwise, a point in time exists at which a dwelling loses its character as a residence and becomes a 'mere' building."[52] That "point in time" was not reached in this case. The structure at issue was a camp house that had a roof, walls, and furnishings, including a television, microwave, and several beds. Additionally, the record indicates that a number of Dennis's friends lived in the structure for an extended period (between three and five months) ending in early 2003—just months before the fire. Although the evidence indicates that Dennis's friends left the property in a dilapidated condition, it also reveals that most of the damages had been repaired by the time of the fire. Contrary to Dennis's argument, the four-month vacancy preceding the fire did not alter the structure's character as a "dwelling," particularly in light of the fact that at the time of the

---

[51]*United States v. Smith*, 354 F.3d 390, 397-98 (5th Cir. 2003) (quoting BLACK'S LAW DICTIONARY 524 (7th ed. 1999)).

[52]*Id.* at 398 (internal citations and quotation marks omitted) (holding that a three-month seasonal vacancy did not alter a motel's "dwelling" status).

16

fire the structure was furnished as a functioning residence.[53]  Accordingly, the district court

did not clearly err in concluding that the structure was a "dwelling" within the meaning of

U.S.S.G. § 2K1.4(a)(1).

* * * * *

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND for

resentencing.

---

[53]*See United States v. Graham*, 982 F.2d 315, 316 (8th Cir. 1992) (holding that "structures used as shelters for weekend fishing retreats" are "dwellings").