# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 2, 2010

No. 09-40413

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff – Appellee

v.

FLORENCE UBAK-OFFIONG

Defendant – Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:07-CR-197-1

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Florence Ubak-Offiong challenges the sufficiency of the evidence supporting her conviction on four counts of health care fraud, various pre-trial orders of the district court, and various aspects of her sentence. We affirm in all respects.

## FACTS AND PROCEEDINGS

In 2002, Champion Medical Supplies ("Champion")—solely owned and operated by Ubak-Offiong—became a Medicare supplier providing durable

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40413

medical equipment such as power wheelchairs. Champion operated from Ubak-Offiong's home in Sugarland, Texas for a year until it relocated to Richmond, Texas. After it was determined that Champion had violated Medicare rules by failing to accept returns of substandard or unneeded equipment, Champion's Medicare supplier number was revoked in 2004.

In 2007, a grand jury in the Eastern District of Texas returned an indictment charging Ubak-Offiong with five counts of health care fraud and two counts of payment of illegal remunerations, in violation of 18 U.S.C. § 1347 and 42 U.S.C. § 1320a-7b(b)(2)(a), respectively. The government charged that Ubak-Offiong implemented a scheme to submit false prescriptions for power wheelchairs on behalf of Medicare beneficiaries, provide those beneficiaries with power scooters, and pocket the substantial cost difference between the two. A week before trial, the district court denied Ubak-Offiong's motion to dismiss or transfer venue to the Southern District of Texas. The district court also denied Ubak-Offiong's proposed jury instruction on venue. The government then moved to dismiss one of the health care fraud counts.[1]

At trial, the government called two expert witnesses who described the process for obtaining a power wheelchair under applicable Medicare rules.[2] The government introduced documents showing that Champion submitted Medicare claims for power wheelchairs on behalf of certain beneficiaries named in the indictment. The evidence showed that Champion had ordered only power scooters, not power wheelchairs, for those individuals from its medical supplier, and that Medicare reimbursed approximately $7,000 for a power wheelchair, but

---

[1] The count was dismissed because the witness who was to testify in support of it died before trial.

[2] Medicare mandates that a person receiving a power wheelchair be prescribed the equipment by a physician and meet certain diagnostic criteria. The prescribing physician must attest that the patient meets the criteria in a Medicare document known as a Certificate of Medical Necessity ("CMN").

only $1,200 for a power scooter. There was also evidence that during the relevant time period Ubak-Offiong bought several large money orders made payable to her husband.

The jury heard testimony from several beneficiaries or their caretakers who had been sent a power scooter by Champion. These witnesses testified that the beneficiaries had not been prescribed either a power wheelchair or power scooter by their primary physicians. At least one beneficiary testified that she was originally approached regarding a power scooter by a woman named "Florence," and the beneficiary's caretaker identified Ubak-Offiong at trial as the "Florence" in question. The jury also heard testimony from physicians—including one podiatrist—whose names were signed to the CMNs Champion had submitted, but who denied ever having treated the beneficiaries or prescribing the power wheelchairs. Finally, the jury heard from Special Agent Jack Geren, an investigator with the Department of Health and Human Services. Geren described how Ubak-Offiong initiated the scheme by paying kickbacks to Emmanuel Akpan, sole owner of Atbestcare Medical Equipment, and Veronica Enebong, sole owner of Vision Medical Equipment, in return for the beneficiaries' patient information. Geren compared invoices from Champion's medical equipment supplier, which listed power scooters, and invoices Champion submitted to Medicare, which listed only power wheelchairs. Geren testified that Champion billed Medicare approximately $3,100,000 for power wheelchairs and accessories and was paid approximately $1,200,000. Finally, he testified that when agents first sought to question Ubak-Offiong, she attempted to flee her home through the back door.

After a two-day trial, the jury convicted Ubak-Offiong on all remaining counts. At the end of the government's case-in-chief and at the close of all evidence, Ubak-Offiong's motions for judgment of acquittal based on insufficient evidence and improper venue were denied. After trial, Ubak-Offiong filed a

motion for new trial, reasserting the same claims. The district court granted the motion as to Counts 6 and 7 and dismissed the counts, then denied the motion as to the other four counts. The district court sentenced Ubak-Offiong to 38 months' imprisonment on each count, to be served concurrently, and three years of supervised release. It also ordered her to pay $1,082,332.20 in restitution and a $400 special assessment.

## DISCUSSION

Ubak-Offiong raises six issues on appeal. First, she argues that the district court abused its discretion in denying her motion to transfer venue. Second, she argues that the district court committed error in denying her requested jury instruction regarding venue. Third, she argues that the evidence of guilt was insufficient to support the jury's verdict. Fourth, she argues that the district court committed error in denying her challenges to the racial composition of the jury. Fifth, she argues that the district court improperly calculated the government's loss attributable to her scheme of health care fraud. Finally, she challenges the district court's calculation of her restitution amount.

## A.    Motion to Transfer Venue

"When an offense is begun in one district and completed in another, venue is proper in any district in which the offense was 'begun, continued, or completed.'" *United States v. Fells*, 78 F.3d 168, 170 (5th Cir. 1996) (quoting 18 U.S.C. § 3237(a)). "The trial court is entitled to broad discretion in ruling on motions to transfer venue, and its decision will be upheld absent an abuse of that discretion." *United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir. 1997). There was testimony that Ubak-Offiong received patient information about Medicare beneficiaries who resided in the Eastern District of Texas, directed her scheme to those persons, and then delivered power scooters to those persons. While there were several other districts in which the scheme was continued, including the

district in which she submitted the claims and the district in which the claims were paid, venue was nonetheless proper in the Eastern District of Texas.

The district court analyzed the motion to transfer in light of the factors articulated in *Platt v. Minnesota Mining & Manufacturing Co.*: (1) the location or residence of defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) the parties' expenses; (6) the location of counsel; (7) the relative accessibility of place of trial; (8) the docket condition of each district or division involved; and (9) any other special elements that might affect the transfer. 376 US 240, 245 (1964). The district court found that the factors were either neutral or cut against transferring the action to the Southern District of Texas, and further termed the motion (filed a mere week before trial) as "a tactical move to delay the proceedings, rather than a genuine plea for relief." This denial was not an abuse of discretion.

## B.    Jury Instruction on Venue

"We review instructions for abuse of discretion, determining whether they provide a correct statement of the law, adequately instruct the jurors, and are factually supportable. In determining whether the evidence supports a given instruction, we evaluate that evidence in the light most favorable to the government." *United States v. Clark*, 582 F.3d 607, 615 (5th Cir. 2009). Ubak-Offiong proposed a jury instruction that would have permitted the jury to find that the crimes she was charged with did not occur in the Eastern District of Texas, but the district court declined to submit the instruction to the jury. As noted above, there was extensive evidence at trial that Ubak-Offiong received patient information about Medicare beneficiaries who resided in the Eastern District of Texas, directed her scheme to those persons, and then delivered power scooters to those persons. Given this evidence, it was not an abuse of discretion to deny the requested instruction.

## C.    Sufficiency of the Evidence

Because Ubak-Offiong properly moved for judgment of acquittal, this court's review of the sufficiency of the evidence is *de novo*. *See United States v. Shum*, 496 F.3d 390, 391 (5th Cir. 2007). "In deciding whether the evidence was sufficient, [the court] review[s] all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *Id*. The court "consider[s] the countervailing evidence as well as the evidence that supports the verdict in assessing sufficiency of the evidence." *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999) (quotation omitted). The evidence is insufficient to support the verdict "[i]f . . . the evidence gives equal or nearly equal circumstantial support to a theory of guilt, as well as to a theory of innocence." *United States v. Ferguson*, 211 F.3d 878, 882 (5th Cir. 2000). In a prosecution for health care fraud, the government must show beyond a reasonable doubt that the defendant executed a scheme to defraud and did so knowingly and willfully. *See United States v. Klein*, 543 F.3d 206, 210-11 (5th Cir. 2008). "The requisite intent to defraud is established if the defendant acted knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to himself." *United States v. Doke*, 171 F.3d 240, 243 (5th Cir. 1999) (quotation omitted).

Evidence was presented at trial that Ubak-Offiong paid Medicare suppliers for beneficiary information. There was testimony that she approached some of these beneficiaries and applied to provide them a power scooter, submitting CMNs from physicians who had not treated the beneficiaries. There was evidence that she provided power scooters to these beneficiaries but charged Medicare for power wheelchairs, pocketing the $5,800 cost difference between the two. There was evidence that she bought large money orders payable to her

husband, which the jury could reasonably conclude was a means of laundering her pocketed gains. Finally, there was evidence that she attempted to flee when approached for questioning, which is probative of guilt. *See United States v. Martinez*, 190 F.3d 673, 678 (5th Cir. 1999).

Taken together, this evidence is clearly sufficient to support the jury's finding of guilt on the counts of Medicare fraud. Nor does the countervailing evidence give nearly equal circumstantial support to a theory of innocence. Ubak-Offiong conceded that "these people probably didn't need the wheelchairs, doctor probably didn't prescribe it, we are not contesting that." Rather, her position was that she was the unknowing pawn of Akpan and Enebong, who provided her with the beneficiary information. Ubak-Offiong attacked the eyewitness identifications of her as unreliable. She also contended that she had never been to Beaumont prior to being indicted, never solicited anyone to supply power wheelchairs or scooters, and never supplied anything other than what was on the CMNs. This defense rests largely on credibility determinations that are not reviewable on appeal. *See United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003). The evidence was sufficient.

## D.   *Batson* and Jury Panel Challenges

Ubak-Offiong, who is black, claims that the district court committed error when it denied her *Batson* challenges to the government's striking of two black venire-persons, Joseph Alpough and Gurrnett Carrier. Applying the familiar burden-shifting framework, *see Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986), the district court found that Ubak-Offiong made out a prima facie case of discrimination. In response, the government argued that Alpough may have had a negative impression of law enforcement because his son was previously prosecuted for drug related crimes. As to Carrier, the government argued that she was employed as a civil fraud investigator and thus might be sympathetic to Ubak-Offiong's argument that she was bamboozled by Akpan and Enebong.

The district court found these reasons to be race-neutral and not pretextual. We review the district court's determination for clear error. *See United States v. Montgomery*, 210 F.3d 446, 453 (5th Cir. 2000). "[T]he ultimate inquiry for the judge is not whether counsel's reason is suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-based." *Id.* (quotation omitted). This court has previously approved as race-neutral the striking of a venire-person because of a family member's drug prosecution. *See United States v. Fisher*, 22 F.3d 574, 577 (5th Cir. 1994). Nor did the district court commit error when it credited the truth of the government's explanation for striking Carrier.

Ubak-Offiong also challenges the racial composition of the jury, arguing that the jury was not drawn from a "fair cross-section" of the Eastern District of Texas because it contained more whites than blacks. To prevail on such a claim, a defendant must demonstrate that (1) the allegedly excluded group is a distinctive group in the community; (2) the representation of this group in venires is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is caused by systematic exclusion of the group in jury selection. *See Paredes v. Quarterman*, 574 F.3d 281, 290 (5th Cir. 2009). "The fair-cross-section requirement does not guarantee jur[ies] of any particular composition. Rather, it only guarantees that the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups." *Id.* (alteration in original) (citation and quotation omitted).

Ubak-Offiong relies upon a Wikipedia website printout of the racial composition of Beaumont, Texas to argue that the jury that convicted her contained more whites than the general population of the community. Even presuming that this document is competent evidence, she has not shown that the jury selection process of the Eastern District of Texas systematically excludes

blacks or even shown what the racial composition of the entire district is, as opposed to simply the city of Beaumont. Accordingly, the district court committed no error in denying Ubak-Offiong's challenges to the jury's racial composition.

**E.    Calculation of Government's Loss**

Ubak-Offiong challenges the district court's sentence of 38 months on grounds that it is based, in part, on an improper calculation of the government's loss as $3,120,042.03.The district court's calculation of loss is a finding of fact reviewable only for clear error. *See United States v. Morrow*, 177 F.3d 272, 301 (5th Cir. 1999). The figure was drawn from the presentence report and derived from an investigation of business records showing that this was the amount Champion had billed Medicare for power wheelchairs. A presentence report "generally bear[s] indicia of reliability sufficient to permit reliance thereon at sentencing," and a defendant must present countervailing evidence that the information in such reports is unreliable. *United States v. Ingles*, 445 F.3d 830, 839 (5th Cir. 2006) (alteration in original) (quotation omitted). Ubak-Offiong presented no countervailing evidence, either at trial or before sentencing, showing that some other figure was appropriate. The district court accordingly adopted this figure as a finding of fact. Pursuant to U.S.S.G § 2B1.1(b)(1)(J), the sentencing court should increase the offense level by 18 if the greater of the intended or actual loss is more than $2,500,000, but less than $7,000,000. U.S.S.G. § 2B1.1 (2008). "'Intended loss' (I) means the pecuniary harm that was intended from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur." *Id*. cmt. n. 3(A)(ii). The district court increased Ubak-Offiong's offense level by 18, yielding a guidelines range of 51 to 63 months, but after considering Ubak-Offiong's request for a downward departure sentenced her to 38 months. In doing so, the district court committed no error.

No. 09-40413

## F.    Calculation of Restitution

Ubak-Offiong argues that the district court abused its discretion by ordering her to pay restitution in the amount of $1,082,332.20. This figure was derived from the presentence report and based on evidence presented at trial and from other sources. Ubak-Offiong argues that this figure exceeds the amount proved at trial and thus the district court's restitution award was an abuse of discretion. We have rejected this argument, requiring that a defendant "prove that the information used at sentencing [to calculate a restitution amount] is materially untrue." *Ingles*, 445 F.3d at 839. Ubak-Offiong failed to do so.

## CONCLUSION

The judgment of the district court is AFFIRMED.