# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 18, 2011

No. 09-60854

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

HASSON CHANDLER, also known as Hice; ZAKIYA ONEAL,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Mississippi
USDC No. 1:08-CR-83-4

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PER CURIAM:[*]

At issue is whether the evidence at trial was sufficient for a reasonable jury to find Hasson Chandler and Zakiya Oneal guilty of conspiracy. In addition, Oneal appeals her sentence, arguing that the district court clearly erred by applying a four-level enhancement based on a finding that she was the "organizer or leader" of the group. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

Hasson Chandler, Zakiya Oneal, and three other co-defendants were charged in a multi-count amended indictment with conspiracy to travel in interstate commerce "to commit crimes of violence, to wit, bank robbery, attempted bank robbery, kidnapping, attempted kidnapping, and extortion." The indictment also charged Oneal with extortion and charged Chandler with attempted bank robbery, attempted kidnapping, traveling in interstate commerce to commit a crime of violence, namely extortion, and possession of a firearm during and in relation to a bank robbery.

The three other co-defendants pleaded guilty to various charges of the indictment and testified against Chandler and Oneal at the ensuing jury trial. Specifically, Jose Brown pleaded guilty to attempted bank robbery and possession of a firearm; Vincent Farley pleaded guilty to attempted bank robbery and possession of a firearm; and Cierra Nations pleaded guilty to conspiracy to commit bank robbery and kidnapping.

After a jury trial, the district court entered a directed verdict of acquittal in favor of Chandler with respect to the bank robbery charge.[1] The jury found Chandler and Oneal guilty of the conspiracy count and not guilty as to the remaining counts. The following evidence was introduced at the trial relevant to the conspiracy count.

Columbus, Mississippi trip

On June 22, 2008, Oneal, Farley, and Brown drove from Tuscaloosa, Alabama, to Columbus, Mississippi, and then to the home of Butch Dollar, a

---

[1] Chandler contends that since the jury acquitted him of attempted bank robbery, he cannot be guilty of conspiracy to commit that same crime. However, Chandler was acquitted of a different bank robbery—the one in Columbus— than the one that forms the basis of the conspiracy conviction—the one in West Point. The government mistakenly charged Chandler with attempting to rob the bank in Columbus, a scheme he had no part in. The conspiracy count in the indictment did not name a specific bank, so the government was still able to proceed on that count without reindictment.

local banker. According to her roommate Rashonda Bolden, Oneal had traveled to Columbus with the intention of robbing a bank. Her plan had been for her and "her friends" to enter the banker's house under false pretenses, cut the banker's phone lines, kidnap the banker and his wife, take them to the bank, and force the banker to open the bank vault. The banker and his wife would then be left in the vault.

However, Brown testified that Oneal told him that they were going to Dollar's house to pick up bond money for her bondsman. Brown accompanied Oneal into the house while Farley remained in the car. At Oneal's direction, Farley parked the car on a side street. Oneal was able to enter Dollar's house by pretending to have financial documents from Dollar's son's friend that she needed to deliver to Dollar. Brown went to the bathroom while Oneal spoke with Dollar and showed him an envelope that was supposed to contain the financial documents. When Dollar noticed the envelope was empty, Oneal explained that she must have left the documents on a desk at home, and she, along with Brown, left the house. After they left, Dollar noticed that the window in the bathroom had been opened. A few minutes later, Dollar, who had become suspicious of Oneal and Brown, went outside to get some of his belongings, including a pistol, from his truck. He saw Oneal and Brown standing across the street, and he asked them if they needed a ride. They declined his offer and turned to walk away. Dollar retrieved his pistol from the truck and returned to the house.

Bolden testified that Oneal decided not to follow through with her plan when she saw that the banker had a gun. Bolden said that she did not immediately tell the police about Oneal's plan because Oneal said "stuff . . . all the time[,]" and Bolden did not believe Oneal.

West Point, Mississippi trip

The following night, on July 23, 2008, while drinking at the Cheap Shots bar in Tuscaloosa with Brown and Farley, Oneal discussed another plan to stage a kidnapping and bank robbery. They agreed to go to West Point, Mississippi, to the home of a banker named Peter Hodo, have Hodo take them to the bank where he worked, and open the safe. Oneal told the others that Hodo was a participant in the plan. According to Brown, Oneal also told them that Hodo had a wife, that the wife did not know about the plan, and that Hodo wanted them to make the robbery look real to his wife. Oneal told Brown and Farley that they would get millions of dollars from the bank.

The plan involved a fourth conspirator, Cierra Nations, knocking on Hodo's door and saying that her car had broken down. Farley believed Nations was chosen to knock on the door because she was white and would draw less attention in Hodo's neighborhood. After Nations knocked on the door, Hodo would come out to the car, and they would then all proceed to the bank. Brown testified that, if Hodo's wife was at the house when they got there, Brown and Farley would take the wife captive, and tie her up using duct tape. Brown also testified that if Hodo's wife did not cooperate, they were going to take her to the bank with them, whether she wanted to go or not. Farley testified that they came up with the specifics of how to make the robbery look real for the wife while they were at Bolden's house on July 24, 2008.

On July 24, 2008, before the plan could be implemented, Oneal was arrested and detained by a bail bondsman. She contacted the others and instructed them to proceed with the plan. Brown went to the bail bondsman's office to meet with Oneal sometime that evening and to retrieve Oneal's cell phone, which was supposed to have a map to Hodo's house on it. When Brown found no map on the phone, Oneal gave him the address, and he went to Bolden's house to print a map off of Bolden's computer. Needing a dependable car to get from Tuscaloosa to West Point, Brown and Farley recruited Chandler,

4

who agreed to the use of his car and to participating in the plan. Brown told Chandler the plan was a "staged heist." Nations testified that the plan was discussed more than one time in more than one location, that Chandler was present when the plan was discussed, and that he agreed to the plan. Nations also stated that when they got in the car to go to West Point, everyone in the car knew about the plan and what was going to happen when they got to West Point.

Later that night, Brown, Farley, Nations, and Chandler left Tuscaloosa en route to West Point. They brought with them a loaded 9mm pistol that they had obtained from a pawn shop earlier that day, ski masks, and duct tape. Brown testified that they brought the gun to make Hodo's wife think the robbery was real. Farley also stated that they brought the gun to show to the wife if she did not cooperate. They also had ski masks to hide their identity and duct tape to tie up the banker and his wife. Nations testified that the things they brought with them to West Point were to be used as "props." Nations also testified, however, that the purpose of the gun was to scare someone if they needed to and that they would have pointed it at Hodo's wife. Everyone in the car knew that they were bringing a gun to Hodo's house. Moreover, Chandler played with one of the ski masks while they were on the way to West Point. Nations testified that Chandler actually put one of the ski masks on while he was in the car.

While the group was on their way to West Point, Oneal called them to inquire as to their progress, to give them directions to Hodo's house, and to encourage them to hurry up and carry out the plan. Oneal told Brown that Hodo was waiting for them. As the night wore on, Brown testified that he spoke to Farley in the car about whether the plan "sounded too easy," which made him "believe that it was fake." According to Brown, Farley agreed, noting that "I don't think it's for real." Nations also testified that the plan "didn't seem

realistic," and in response to a question as to whether she really believed that the banker was in on it, she replied, "Not really." The group got lost along the way because they could not follow the map that they had printed out. In fact, they ended up asking a Highway Patrolman for directions. Running short on gas and unable to locate the banker's house, the group left West Point and returned to Tuscaloosa.

Hodo testified that he did not know any of the defendants, except Oneal, whom he met once at the bank when she expressed an interest in buying a house from one of the bank's customers. While she was at the bank, she went into his personal office where she could have seen pictures of his wife. Hodo gave her a business card that contained his full name, his cell phone number, and the address of the bank. He was not involved in any plan to steal money from the bank.

After the jury returned their guilty verdicts as to the conspiracy count, the probation officers prepared presentence reports for Chandler and Oneal and included a four-level enhancement to Oneal's offense level pursuant to § 3B1.1(a) for her role as an organizer or leader of the conspiracy. Oneal objected to the enhancement, but the objection was overruled. Chandler and Oneal were each sentenced to 60 months in prison. This appeal followed.

II

The sufficiency of the evidence is reviewed to determine whether any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The standard of review is, therefore, whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998). This court considers the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices made in

support of the verdict. *Id.* The court looks to whether the trier of fact made a rational decision, rather than whether it correctly determined the defendant's guilt or innocence. *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir. 1995).

The federal conspiracy statute, 18 U.S.C. § 371, provides that if " . . . two or more . . . persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

Thus, to convict a defendant of a conspiracy charge, the government is required to prove three elements beyond a reasonable doubt: (1) an agreement between the defendant and one or more persons, (2) to commit a crime, and (3) an overt act by one of the conspirators in furtherance of that agreement. *United States v. Ingles*, 445 F.3d 830, 838 (5th Cir. 2006). The government is not required to provide direct evidence of the conspiracy. *United States v. Holmes*, 406 F.3d 337, 351 (5th Cir. 2005). Circumstantial evidence is enough to prove an agreement, and minor participation may support a conviction. *United States v. Bieganowski*, 313 F.3d 264, 277 (5th Cir. 2002). "An agreement may be inferred from concert of action, voluntary participation may be inferred from a collection of circumstances, and knowledge may be inferred from surrounding circumstances." *Id.* (internal punctuation omitted). "A [co-]conspirator need not know all the details of the unlawful enterprise, so long as he knowingly participates in some way in the larger objectives of the conspiracy." *United States v. Davis*, 226 F.3d 346, 354 (5th Cir. 2000).

The essence of conspiracy is the agreement to commit a particular crime. *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003). The Supreme Court has long held that "to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of

criminal intent necessary for the substantive offense itself." *United States v. Feola*, 420 U.S. 671, 686 (1975); *Ingram v. United States*, 360 U.S. 672 (1959); *see also United States v. Binetti*, 552 F.2d 1141, 1142 (5th Cir. 1977) (reversing a defendant's conviction for conspiracy to possess and distribute cocaine when the defendant did not conspire to sell cocaine, but rather a harmless, lawful substance that looked like cocaine).   It is part of the government's burden to prove that "'the intended future conduct [the conspirators] agreed upon includes all the elements of the substantive crime.'" *United States v. Pinckney*, 85 F.3d 4, 8 (2d Cir. 1996) (quoting *United States v. Rose*, 590 F.2d 232, 235 (7th Cir. 1978)); *see also United States v. Foote*, 413 F.3d 1240, 1250 (10th Cir. 2005); *United States v. Warshawsky*, 20 F.3d 204, 209 (6th Cir. 1994); *United States v. Vaglica*, 720 F.2d 388, 391 (5th Cir. 1983).

Therefore, we must ask, drawing all inferences in favor of the government, "whether a rational trier of fact could have found that the evidence established the essential elements of [any of the offenses] beyond a reasonable doubt," such that there was an agreement between the defendants and one or more persons to commit any of the crimes as charged in the indictment. *See United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998).   After determining whether there was an agreement, the court may then consider whether there was an overt act in furtherance of that agreement.

Here, the jury convicted Oneal and Chandler of conspiracy (Count One). Count One of the amended indictment reads, "Defendants did knowingly and willfully conspire  with each other and with others known and unknown to the Grand Jury, to travel in interstate commerce with intent to commit crimes of violence, to-wit, bank robbery, attempted bank robbery, kidnapping, attempted kidnapping and extortion, in violation of 18 U.S.C. §§ 2113(a) and (d), 18 U.S.C. §§ 1201(a) and  (d), 1952(a)(2) and 1951." As the jury instructions noted, the government had to prove beyond a reasonable doubt the conspiracy, as well as

the substantive elements of each crime, as indicated in the indictment. The amended indictment also discusses the "Manner And Means Of The Conspiracy":

    1.     It was part of the conspiracy that [defendants], would and did devise a plan and scheme to rob banks in Columbus and West Point, Mississippi.

    2.     It was further part of the conspiracy to kidnap an employee of the bank and to take him to the bank to aid and assist them in the robbery.

    3.     It was further a part of the conspiracy to threaten the safety and well-being of a member of the bank employee's family in order to extort or force his cooperation and assistance in robbing the bank.

The jury was instructed that, to convict a defendant of bank robbery, the government is required to prove that an individual or individuals "by force and violence, or by intimidation, t[ook], or attempt[ed] to take, from the person or presence of another . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association." 18 U.S.C. § 2113(a).[2]

Based on the evidence offered at trial, a rational trier of fact could have concluded that Oneal and Chandler did agree with one or more persons to commit bank robbery. Oneal devised the plan, lied to everyone about Hodo's willing participation, provided directions to Hodo's house, and called them on the road in order to encourage them to proceed as planned. Oneal contends that there is no conspiracy because everyone, except her, believed that Hodo was in on the plan to rob the bank. The record, however, reflects that at some point, three of the coconspirators—Brown, Farley, and Nations—stopped believing

_____

[2] We note that § 2113(a) sets out two possible ways to commit bank robbery, and only the first requires the use of force or violence. The second simply requires proof that a defendant "enters or attempts to enter any bank . . . with intent to commit in such bank . . . any felony affecting such bank . . . or any larceny"—without requiring use of force or violence. The jury in this case was only instructed on the first form of bank robbery.

Oneal that Hodo was in on the plan and continued to proceed nonetheless. As soon as they stopped believing Oneal, a conspiracy formed. Oneal's plan involved threatening Hodo and his wife with a gun, and tying up Hodo's wife, thereby using "force" and/or "intimidation" to take money from a bank. Therefore, there is sufficient evidence for a reasonable jury to find that there was an agreement between Oneal and one or more persons to commit bank robbery.

Even if the other coconspirators believed Oneal and thought Hodo was an inside man the entire time, the record supports an inference that the coconspirators agreed to use force, violence, or intimidation with respect to Mrs. Hodo. Brown testified that they had contemplated what to do if "Mrs. Hodo did not cooperate"— tie her up with duct tape, use a gun to scare her, and "bring her along with us" "to the bank and leave her in the bank with Mr. Hodo."

As for Chandler, a rational jury could have found that he was aware of the plan and knew that it involved using force and intimidation to rob a bank. Chandler knew they were bringing a loaded 9mm pistol with them, and he knew about the ski masks; Nations had noted that she even observed Chandler trying on a ski mask. Brown testified that he had told Chandler that it was a "staged heist" and that they had all expected Mrs. Hodo to be there and "we were going to tape her wrists up and her legs up." Brown also testified that the plan was to take Mrs. Hodo to the bank against her will if she did not cooperate. In addition, Nations testified that Chandler was present when the plan was discussed, and that he agreed to the plan. Because Brown testified that the plan contemplated tying up Mrs. Hodo and bringing her to the bank against her will, and because both Brown and Nations testified that Chandler was present when the plan was discussed, there was sufficient evidence in the record for a reasonable jury to find that Chandler agreed with one or more persons to use

10

force, violence or intimidation to take money from a bank—that is, conspire to commit bank robbery.[3]

In addition to the evidence related to bank robbery, there is also evidence in the record to show that Oneal conspired to commit kidnapping. To prove an offense of kidnapping pursuant to 18 U.S.C. § 1201, the Government must establish "(1) the transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom or reward or otherwise, (4) such acts being done knowingly and willfully." *United States v. Barton*, 257 F.3d 433, 439 (5th Cir. 2001).

The relevant phrase here is "unconsenting." Appellants contend that because the amended indictment specifically references "a conspiracy to kidnap an employee of the bank," their conspiracy convictions must rest on a finding that they conspired to kidnap Hodo. If the coconspirators believed that Hodo was a willing participant, then Hodo would be implicitly consenting to the "staged" kidnapping, and there could be no conspiracy-to-commit-kidnapping conviction.

According to the given jury instructions, the jury would have to find that the defendant(s) knowingly kidnaped or attempted to kidnap "the person described in the indictment." *See Zafiro v. United States*, 506 U.S. 534, 540 (1993) ("[J]uries are presumed to follow their instructions.") (internal citation omitted). The person described in the indictment is an "employee of the bank." That is, a conviction here could only be based on a finding that appellants conspired to kidnap Hodo, the banker, not his wife. As discussed above, a reasonable jury could infer that the other coconspirators, based on Brown's and

---

[3] In addition, given the testimony of Brown, Farley, and Nations, a reasonable jury could infer that Chandler also must have known the plan was a fake. For example, Brown testified that he and Farley expressed doubts about the validity of the plan in the car on the way to West Point—the same car that Chandler was also traveling in. Although such an inference would be based on circumstantial evidence, such evidence can be sufficient to prove an agreement. *See Bieganowski*, 313 F.3d at 277.

11

Nations's testimony, did not believe Oneal about Hodo's supposed consent to be tied up and taken to the bank. Thus, the jury could find an agreement between at least some of the conspirators to kidnap Hodo against his will, satisfying the statutory elements of 18 U.S.C. § 1201.

Finally, there is sufficient evidence in the record to show that Oneal conspired to commit extortion. Extortion requires "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The amended indictment specifically states that it was "part of the conspiracy to threaten the safety and well-being of a member of the bank employee's family in order to extort or force his cooperation and assistance in robbing the bank." The issue here is whether, based on the evidence, a reasonable jury could find that Oneal conspired to threaten the safety of Mrs. Hodo, in order to extort or force Hodo's cooperation in robbing the bank. Based on Brown's and Nations's testimony that they did not believe that Hodo was in on the plan, a reasonable jury could infer that there was agreement to threaten Mrs. Hodo's safety, using a gun, in order to extort Hodo to aid them in robbing the bank.

In addition to an agreement between two more or persons to commit a crime as charged in the indictment, conspiracy also requires an overt act by one of the coconspirators. *See Ingles*, 445 F.3d at 838. The overt acts here are listed in the amended indictment, and include, *inter alia*, acquiring and possessing "a roll of duct tape, ski masks and a firearm for the purpose of executing the plan and scheme." There was sufficient evidence at trial to show beyond a reasonable doubt that at least one of the coconspirators committed overt acts to further the objects of the conspiracy.

## III

Oneal also appealed her sentence. The district court applied a four-level upward enhancement to Oneal's offense level because of a finding that she was

an organizer or leader of the conspiracy under U.S.S.G. § 3B1.1(a). The issue here is whether the district court's factual finding was clearly erroneous. *See United States v. Watson*, 988 F.2d 544, 550 (5th Cir. 1993) (reviewing district court's finding that a defendant was an organizer or leader under the clearly erroneous standard). Under § 3B1.1(a), a four-level upward enhancement is authorized "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." § 3B1.1(a). In making this determination, a sentencing court should consider: (1) the exercise of decision making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, comment. (n.4). Moreover, the factual finding that a defendant is a leader or organizer need only be supported by a preponderance of the evidence. *United States v. Puig-Infante*, 19 F.3d 929. 944 (5th Cir. 1994).

The district judge's factual finding was not clearly erroneous. The evidence supported the district court's finding that Oneal was a leader or organizer of the conspiracy. The evidence established that plans to rob either the banks in Columbus and/or West Point were Oneal's plans, that Oneal provided Hodo's address to others involved in the conspiracy, that she directed the others to continue with the West Point trip even though she was unable to make the trip, and that she contacted the others on their way to West Point to check on their progress and to encourage them to continue their efforts to find Hodo's house.

For the foregoing reasons, we affirm Oneal and Chandler's convictions for conspiracy. We also affirm Oneal's sentence.

AFFIRMED.